Janet Lavern SMITH (Now Milby), Appellant

v.

John Melton SMITH, Appellee.

No. 2011–CA–002306–MR.

Court of Appeals of Kentucky.

May 23, 2014.

Rehearing Denied Dec. 3, 2014.

Bryan E. Bennett, Campbellsville, KY, for appellant.

Dawn Lonneman Blair, Phyllis K. Lonneman, Elizabethtown, KY, for appellee.

Before CLAYTON, JONES, and TAYLOR, Judges.

## ·OPINION

CLAYTON, Judge:

Janet L. Smith (now Milby) appeals from post-dissolution orders of the Taylor Circuit Court. She contends that the trial court erred in several of its decisions involving the distribution of property and computation of the child support obligation. After careful review, we affirm.

## FACTS

Janet and John M. Smith were married on two different occasions. Initially, they were married on February 15, 1974, and divorced on April 19, 1977. The parties reconciled and began living together in March 1979. They remarried on September 30, 1984, but separated permanently on February 23, 1999. Janet filed a petition for dissolution of the second marriage on March 2, 1999. During the second marriage, Janet and John had two sons who were ages thirteen and eleven when the dissolution petition was filed. (The children were emancipated when the trial court entered its final judgment in 2010.) On December 4, 2001, the trial court entered a decree of dissolution.

The history of the action is contentious and protracted. While the decree dissolving the marriage was entered in 2001, a final hearing on the property division and related matters was held in August 2003. Following this final hearing, numerous motions regarding property division and child support were filed between 2003 and 2010. Related to these motions, the trial court had additional hearings.

Approximately seven years after the hearing on September 7, 2010, the trial court entered its nineteen-page "judgment for property division," whereupon both parties filed motions to alter, amend, or vacate, which, for the most part, after further hearings the trial court denied on November 21, 2011. Janet now appeals both the final order and the order denying her motion to alter, amend, or vacate.

On appeal, Janet makes numerous claims of error by the trial court. She contends that the trial court erred by not awarding her traceable nonmarital assets; not granting her $4,870.00 to recompense her for one-half of an amount taken by John; not granting her $2,500.00 for the repair of a car; incorrectly valuing the parties' personal property and granting John the difference in the valuation; and, lastly, allotting John $15,385.65 for overpayment of child support.

## ANALYSIS

█ Prior to addressing Janet's claims of error, we examine the fact that in portions of her brief Janet supports her claims by making reference to videotapes of hearings. However, on appeal Janet failed to certify any videotapes of the various hearings. It is the Appellant's duty to ensure that the record on appeal is "sufficient to enable the court to pass on the alleged errors." *Burberry v. Bridges,* 427 S.W.2d 583, 585 (Ky.1968).

Contrary to Janet's assertions that submission by the court clerk of video recordings is automatic under Kentucky Rules of Civil Procedure (CR) 98, a properly filed designation of record must provide the court clerk with a list of the "untranscribed portions of the proceedings stenographically or electronically recorded as appellant wishes to be included in the record on appeal[.]" CR 75.01(1). Nonetheless, the form submitted by Janet for certi-

fication of the record, pursuant to CR 75.01, merely referenced 957 pages of the trial court's files and did not reference any video records or CD/DVD recordings.

Janet asserts that since CR 98 requires the Circuit Clerk to certify one videotape within thirty days of an appeal, it was not necessary for her to specifically list electronically recorded items on the form for inclusion in the record. In fact the rule says:

> To facilitate the timely preparation and certification of the record as set out in this rule, appellant or counsel for appellant, if any, shall provide the clerk with a list setting out the dates on which video recordings were made for all pre-trial and post-trial proceedings necessary for inclusion in the record on appeal. Designation of the video recordings shall be filed within the ten (10) day time limitation and in the manner described in Rule 75.01(1).

CR 98(3).

■ Since Janet did not request any video recordings to be certified for the appeal, they are not part of the appellate record and, thus, we are unable to review them. Moreover, "[i]t has long been held that, when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky.1985). Accordingly, our resolution of this appeal is based upon the record provided to us, and we assume the missing portions of the record support the trial court's decision.

### 1. Property distribution

*Nonmarital assets*

■ Statutory guidance is provided in Kentucky Revised Statutes (KRS) 403.190 for the disposition of property during dissolution of marriage action. In general, trial courts are directed to use a three-step process in dividing the marital estate, which includes: first, to characterize each item of property as marital or nonmarital; then to assign each party's nonmarital property to that party; and finally, to equitably divide the marital property between the parties. *Ensor v. Ensor*, 431 S.W.3d 462, 470 (Ky.App.2013).

The determination of whether property is marital or nonmarital relates to the time or manner in which property is acquired. As provided in KRS 403.190(3), the basic rule is simple: all property acquired by either party after the date of the marriage and before the date of divorce or legal separation is marital property. Thus, any property acquired during this time span, which does not fall within a statutory exception, is marital property. KRS 403.190(2).

The presumption that all property acquired during the marriage is marital may be overcome by proving one of the five exceptions found in KRS 403.190(2). Here, the pertinent exception is found in KRS 403.190(2)(e). The exception in KRS 403.190(2)(e) treats the increase in value of nonmarital property acquired before the marriage as nonmarital to the extent that the increase did not result from the joint efforts of the parties.

■ Nonetheless, when the original property claimed to be nonmarital is no longer owned or in existence, it is incumbent upon the party making the nonmarital claim to trace the previously owned property into a presently owned specific asset. *Chenault v. Chenault*, 799 S.W.2d 575 (Ky.1990). The "source of funds rule" is often used to achieve tracing when the property before the court includes both marital and nonmarital components. *See Travis v. Travis*, 59 S.W.3d 904, 909 (Ky. 2001). The source of funds rule means that the character of the property, that is,

whether it is marital, nonmarital, or both, is determined by the source of the funds used to acquire property. *Id.* (internal citations omitted).

In *Sexton v. Sexton,* 125 S.W.3d 258, 266 (Ky.2004), the Kentucky Supreme Court defined tracing as "the process of tracking property's ownership or characteristics from the time of its origin to the present." The Court then provided that "[a] party claiming that property, or an interest therein, acquired during the marriage is nonmarital bears the burden of proof." *Id.* This burden is met when the party claiming that an asset is nonmarital provides clear and convincing evidence that the claimed property falls under one of the nonmarital exceptions. *See Brosick v. Brosick,* 974 S.W.2d 498, 502 (Ky.App. 1998).

Having examined the legal parameters for the distribution of property and characterization of assets as marital or nonmarital, we turn to Janet's contention that the trial court erred by not awarding her monetary compensation for several nonmarital assets. She maintains that these assets were acquired prior to the date of the parties' second marriage in 1984 and, therefore, both the assets and also their increase in value are nonmarital. We begin with a description of the relevant assets.

First, Janet alleges that in 1982, $15,000.00 was withdrawn from her Chevron employee savings account. This money was used to purchase a home, hereinafter referred to as the Tammy Trail home. Because the proceeds from the sale of the Tammy Trail home were then used to purchase the Trotter Lane home, Janet claims that she is entitled to restoration of this money as a nonmarital contribution.

In addition, Janet asserts that she is entitled to $47,333.33, based on her nonmarital acquisition of Chevron Corporation stock, which she purchased before the second marriage. She eventually sold the stock in August 1992 (eight years after the date of the 1984 marriage) and placed the proceeds into the parties' joint Fidelity Investment account. Later, she maintains that money in the investment account was used to purchase the Trotter Lane home.

Finally, Janet contends that a portion of the parties' joint Fidelity Investment Individual Retirement Account (hereinafter "IRA") is nonmarital. The basis of her claim is a Chevron Retirement Annuity. She alleges that in 1984, she rolled the Chevron Retirement Annuity into the joint IRA. It is her contention that in 1987, she requested the nonmarital portion of the fund be determined. Although she posits that the $16,077.41 is hers, she provides no documentation relating back to a Chevron Annuity account. Instead, this amount is based on a check, dated January 29, 1987, drawn from her Chevron employees' credit union.

John's response to Janet's nonmarital claims of $15,000.00 and $47,333.33 is twofold. First, he maintains that not only has Janet not proven the nonmarital claims, but also that because significant commingling of the funds has occurred, they have lost their nonmarital characterization. Second, he contends that the parties had an agreement when they married that all property would be treated jointly.

Lastly, with regard to the nonmarital claim on the Fidelity Investment IRA, John notes that the IRA was opened in 1987 and, thus, is presumed to be marital. Certainly, the annuity's earnings or contributions between 1984 and 1987 would definitely be marital. Plus, Janet never provided any evidence showing the balance of the annuity at the time of the marriage. Therefore, she did not meet her burden of proof to establish a nonmarital asset.

The standard of review on appeal for a question involving the characterization of whether property is marital or nonmarital is two-tiered. Factual findings of the trial court are reviewed under the clearly erroneous standard of CR 52.01, but the trial court's legal conclusions are reviewed *de novo* as an issue of law. *Smith v. Smith*, 235 S.W.3d 1, 6–7 (Ky. App.2006).

Before dealing specifically with the three assets, we consider the trial court determination that the parties were engaged in a joint venture between 1979 and 1984. This time period was after the first marriage when they lived together but were not yet married. The trial court found that the parties had an agreement that they would use John's income to support the household and Janet's income for investment purposes. Then, when the parties remarried, they agreed that, based on the joint venture, all the property owned by them on the date of the marriage would be considered joint property with each party having an equal interest. Ultimately, the trial court held that because of the agreement, the parties were engaged in a joint venture.

John insists that the parties had an agreement when they married for the second time that all property they owned on the date of the marriage would be considered joint property from that time forward, with each party having an equal interest in the property. This agreement encompassed Janet's ownership of Chevron stock. Thus, pursuant to the agreement, while the property acquired during the cohabitation retains its nonmarital character, it is jointly owned, and shall be divided in this manner.

Janet contends that neither John nor she provided any evidence that they had a joint business venture during their cohabitation. Also, Janet argues that it was inappropriate for the trial court to decide that a joint venture existed since KRS 403.190 does address this manner of acquisition to ascertain whether property is marital or nonmarital. However, that is not pertinent since there is no dispute that the property acquired during this time period is unquestionably nonmarital.

If the parties cohabited without the benefit of marriage, division of the acquired property for such an arrangement is not controlled by Chapter 403. Rather, the real question is whether, based on an agreement, this acquired property is subject to equal ownership. It is intriguing, however, that Janet proffers that notwithstanding her position that no joint venture existed between the parties, they should now have a 50/50 split of all pensions, annuities, and retirement accounts acquired between 1979 and 2001. Her proposal, in fact, validates the existence of a joint venture during the years of cohabitation.

Kentucky cases have permitted unwed cohabitators to claim an interest in property acquired during the relationship if the claimant can prove a partnership, a joint venture, or a profit-sharing agreement. In *Akers v. Stamper*, 410 S.W.2d 710 (Ky. 1966), the court determined that the parties had an express agreement of joint venture or partnership and, therefore, the property in question was jointly owned.

Findings by a trial court shall not be set aside unless clearly erroneous, and due regard shall be given to the trial court to judge the credibility of the witnesses. CR 52.01. Furthermore, under CR 52.01, findings of fact should not be disturbed on appeal where there is sufficient evidence of probative value to sustain such findings. *Phelps v. Brown*, 295 S.W.2d 804 (Ky. 1956). Having carefully reviewed the record herein, we find that there was suffi-

cient evidence before the trial court to support its finding of a joint venture.

In the instant case, the trial court had evidence from John that a joint venture existed between the parties. And in light of the eventual remarriage, the existence of this agreement seems even more logical. Therefore, the trial court's findings that the parties agreed to enter into a joint venture during the period of cohabitation are not clearly erroneous. And the existence of a joint venture renders the assets acquired during that time period jointly owned.

Besides the trial court's decision regarding a joint venture, the trial court also implicated the issue of commingling of nonmarital and marital assets and the concomitant increase in value from such properties. KRS 403.190(2)(e). To make a claim under this exception, Janet must be able to "trace the previously owned property into a presently owned specific asset." *Sexton*, 125 S.W.3d at 266.

Although we have decided that the trial court was not in error in finding the existence of a joint venture, we will now address specifically whether the three properties for which Janet requests compensation retained nonmarital status. To reiterate, these properties are the $15,000.00 from a premarital savings account, $47,333.33 from the sale of her Chevron stock, and $16,077.41 from a Chevron Annuity. Janet seeks recompense for these nonmarital assets from a restricted account wherein the proceeds from the sale of the marital home were deposited.

After the sale of the marital home, hereinafter to be referred to as the Trotter Lane home, the trial court in 2003 ordered that the payment of all expenses for the sale of the home, that is, the cost of sale, first mortgage, real estate taxes, and a payment of $4,000.00 to be paid and that

remaining balance deposited in an interest-bearing escrow account at a Taylor County financial institution.

Neither party disputes that the Trotter Lane home was purchased during the marriage. Janet, however, maintains that money from some of her nonmarital assets was used as a down payment on the property. And therefore, she is entitled to a *Brandenburg* calculation to ascertain her portion of the proceeds of the sale. But in order to receive compensation for these assets, she must be able to trace them from a nonmarital asset to the down payment. *Chenault*, 799 S.W.2d at 578.

■ The first asset is the $15,000.00 Janet withdrew from her Chevron employees' savings account in July 1982. She alleges that this money was used to purchase the Tammy Trail home. To support this claim, Janet produced copies of two checks written by her in 1982. One was for closing costs on the Tammy Lane home and the other is a check made payable to Rufus Hanford. The amounts of the checks do not add up to $15,000.00. Ultimately, Janet says that when the Tammy Trail home was sold, $15,000.00 of the proceeds was used to purchase the marital home on Trotter Lane.

Notably, the checks themselves provide no direct connection to a nonmarital Chevron Employee Savings Account. They are written on Janet's personal checking account with Crocker National Bank. Hence, Janet never provides any documentation for the Chevron employees' savings account. Furthermore, Janet provides no evidence to demonstrate that the $15,000.00 used to purchase the Tammy Trail home was ultimately used to purchase the Trotter Lane home. And even if the nonmarital savings account existed, the $15,000.00 has not been traced between these assets. The lack of documentation

and the multiplicity of exchanges reveal that the money was commingled and lost its nonmarital characterization.

Moreover, as previously decided, the parties had entered into a joint venture. This joint venture meant that any assets acquired during this time period were jointly owned. Thus, even if Janet had properly traced the $15,000.00, she is not entitled to any offset for it.

■ The second asset is the Chevron stock. Prior to the parties' 1984 marriage as previously noted, Janet worked for the Chevron Corporation. During that time, she purchased stock options. According to Janet, she invested 2.5% of her income in the member accounts of the stock plan, and after the parties remarried, she continued to purchase stock.

In August 1992, Janet sold the stock and the proceeds were placed in a Fidelity Investments joint account. Janet maintains that she is entitled to reimbursement for the stock sale since the stock was a premarital and, thus, nonmarital asset. She sold 576.81 shares of Chevron stock for $82.06 per share, which resulted in $47,333.33, which she contends was nonmarital.

However, Janet does not provide any authenticated proof of the sale of the stock or the amount received from the sale. Rather, the record contains a handwritten explanation which does not correspond to any paperwork. Further, the copies of investment account and bank statements provided by Janet are in both parties' names and dated after the parties' second marriage.

The down payment was made using the Fidelity Investment account. Janet alleges that $47, 333.33 of this money for the marital residence on Trotter Lane is nonmarital and should be restored to her. Again, no documentation is provided showing the down payment on the Trotter Lane home. And, certainly, no evidence is provided that highlights said amount as Janet's contribution to the purchase of the home.

The trial court observed that the Chevron stock was sold in 1992, eight years after the parties' second marriage. Additionally, the money from the sale of the stock was placed in a joint investment account, which was indisputably marital. Despite Janet's assertion that $47,333.33 of nonmarital assets were invested in the marital home on Trotter Lane, the trial court found that the $47,333.33 was commingled with the marital funds in the investment account and then used to purchase the marital home on Trotter Lane. (The parties agree that the Trotter Lane home is a marital asset.)

Again, we concur with the trial court's finding that the stock was acquired both during the time of the joint venture and during the marriage. And we agree that the revenue from the stock sale (whatever the amount) was comingled with marital assets and, thus, is presumed marital. Plus, the documentation provided by Janet was insufficient to establish any premarital interest in the home. Hence, the premarital portion is equally owned by agreement and the rest is marital. Therefore, the trial court did not err in finding that Janet was not entitled to restoration of the $47,333.33 as nonmarital.

■ Lastly, Janet asserts that a non-marital asset existed based on her ownership of a Chevron Annuity that she acquired prior to the parties' second marriage. In 1987, the annuity was rolled over into an IRA with Fidelity Investments. She values the asset based on a deposit of $16,077.41 to this IRA. She now claims an entitlement in this amount since it was nonmarital.

Conspicuously, the initial proof of the existence of the asset was in 1987, three years after the parties remarried. Further, in citing the asset, Janet provides no evidence from Chevron establishing the existence of the Chevron Annuity or its value of the asset on the date of the marriage. Nor does she address whether any increase in value was based on the parties' joint efforts. Indisputably, any contributions and interest earned after the marriage are marital.

Thus, Janet did not meet her evidentiary burden to prove the amount of the nonmarital portion or to trace it to the Fidelity IRA. We conclude, as did the trial court, that because the IRA was opened in 1987, it is presumed to be marital. Indeed, the annuity's earnings or contributions between 1984 and 1987 are definitely marital. Thus, the trial court did not err when it held that because an indeterminate amount was marital and an indeterminate amount was acquired during the parties' period of joint venture, Janet was not entitled to restoration of these funds.

Even under the "relaxed" standard of proof required for tracing nonmarital property stated in *Chenault*, a party seeking to trace nonmarital property into a present marital asset must show that "he or she has spent his or her nonmarital assets in a traceable manner during the marriage." *Polley v. Allen*, 132 S.W.3d 223, 229 (Ky.App.2004). Simply asserting that he or she brought nonmarital property into the marriage is not sufficient. *Id.*

In the instant case, it is undeniable that the parties had a complex and constantly changing financial history, which included a period of cohabitation. Janet has simply not met the burden of proof to establish nonmarital claims. Moreover, we cannot conclude that it was clearly erroneous for the trial court to find that Janet and John had an agreement to share assets and living expenses during their cohabitation.

*Miscellaneous issues of property distribution*

■ Janet makes several claims that the trial court erred in its distribution of the property. As previously explained, KRS 403.190 provides the methodology for the disposition of property during a dissolution of marriage action. After dealing with nonmarital property, the trial court is to equitably divide the marital property between the parties. Notably, a trial court is not obligated to divide the marital property equally. *Davis v. Davis*, 777 S.W.2d 230, 233 (Ky.1989). Instead, a trial court need only divide the marital property "in just proportions." KRS 403.190(1). A trial court has wide discretion in dividing marital property and we may not disturb the trial court's rulings on property-division issues unless the trial court has abused its discretion. KRS 403.190(1). The test for abuse of discretion is whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999) (citations omitted).

1. John's withdrawal of $9,740.00

■ Between May 27, 1998, and February 18, 1999, John made numerous withdrawals ultimately totaling $9,740.00 from his savings account with General Electric Park Credit Union. According to him, the money was used to support the family and maintain the marital residence. Janet alleges that John withdrew this money for his own personal use and that she should receive $4,870.00 for her marital portion.

The trial court found that John withdrew this money during the marriage and before the separation; he used the money for family expenses; and that Janet failed to establish that the money was not used

for family expenses and, thus, was not entitled to \$4,870.00. Given the trial court's discretion, there is no abuse of discretion and we will not disturb its finding.

2. Reimbursement of \$2,250.00 for a car

In a written agreement, dated September 25, 2000, the parties agreed to several things including that John would have a car repaired or pay Janet for the repairs. Since the car was not repaired, Janet is now seeking \$2,250.00. This sum purportedly represents the value of the car plus prejudgment interest from September 25, 2000. Ultimately, Janet maintains that after three years of requesting that John repair the car, she had the car hauled away. John counters that the evidence provided by Janet did not prove the amount of her claim (no estimates for the repair) and is not persuasive.

▇▇▇▇ Debts are generally "assigned on the basis of such factors as receipt of benefits and extent of participation[.]" *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 523 (Ky.2001). Further, there is no presumption that debts must be divided equally or in the same proportion as the marital property. *Smith*, 235 S.W.3d 1 at 15. And a trial court's assignment of debt is within the realm of its discretion. *Rice v. Rice*, 336 S.W.3d 66, 68 (Ky.2011). Further, it is reviewed for an abuse of discretion. *Id.*

The trial court heard the evidence and the testimony of the parties. Given the trial court's knowledge of the parties and the facts herein, we cannot conclude that it was an abuse of discretion for the trial court to decide that Janet was not entitled to this sum.

3. Incorrect valuation of personal property

▇▇▇▇ Janet alleges that the trial court erred when it valued the personal property. Attached and included with the trial court's September 7, 2010 order are four exhibits detailing the parties' nonmarital and marital personal property. These exhibits are referenced in the order. After restoring the nonmarital personal property enumerated in the first two exhibits, the trial court provided two other exhibits detailing the marital property for each party and its division. It valued John's personal property at \$8,575.97 and Janet's personal property at \$14,425.00.[1] The trial court then awarded John a monetary sum to equalize the difference.

Janet points out that the pretrial exhibits proffered by her valued her personalty at \$5,275.00 and John's personalty at \$10,866.00. Apparently, Janet assessed the value of the personal property using resale value, and John assessed it using retail value. She does not cite to the record to support this contention. And while Janet notes the different methods used to value the personal property, she provides no rationale to support her belief that her valuation is superior to John's valuation or that it must be used.

Nonetheless, mere assertions that the trial court erred do not establish that it did. Besides, the trial court has the discretion to select the valuation method that it believes is equitable. Pursuant to KRS 403.190, the trial court is to divide marital

---

1. The trial court's order cites the value of Janet's personal property as \$14,425.00 and John's personal property as \$8,575.97. Thereafter, it awards John \$5,849.03 to equalize the difference. In Janet's motion to alter, amend, or vacate, she alleges evidence showed that John's personal property should be valued at \$11,856.00. But in the brief, she states that she received personal property in the amount of \$11,856.00. No explanation is provided for this discrepancy.

property equitably. Furthermore, the trial court "has wide discretion in dividing marital property; and we may not disturb the trial court's rulings on property-division issues unless the trial court has abused its discretion." *Smith*, 235 S.W.3d 1 at 6.

Over the course of this case, the trial court conducted numerous hearings and received countless evidence from both parties on this and other disputed matters. Janet has not established that the trial court committed clear error in its findings regarding the value of the personal property. In sum, since no clear error by the trial court was shown, it did not abuse its discretion in dividing the personalty or in ordering that John receive a monetary sum for the difference between the values of the parties' personal property.

II. Child support

 Janet also takes exception to the trial court's order to award John $15,385.68 for back child support payments. The trial court made several findings regarding where the children lived and the amount of child support paid and not paid by the parties. Clearly, since the children's dates of birth are 6/2/85 and 1/11/88 respectively, it has been some time since child support or custody was a consideration. One reached majority in 2003 and the other in 2006.

Janet's rather cursory argument begins with her observation that the trial court found that John overpaid his child support by paying $966.00 per month from May 2000 to December 2000. She claims that he actually only paid this amount through October 2000. The only evidentiary support for this claim is a citation to a video-

tape of a hearing, which, as explained above, is not part of the record on appeal.

Next, Janet points out that the figure used by the trial court for John's income did not match his W–2 forms. In fact, she alleges that this income amount was $275.00 less than the child support amount on the child support worksheet[2] initialed by John on November 2001. (As an aside, the child support amount initially challenged by Janet, in fact, was required in 2000, and the child support worksheet for this amount is on page 24 of the certified record.) However, a close reading of the September 7, 2010 order shows that no mention of John's income at any time was referenced by the trial court judge.

It is impossible to discern from Janet's brief where, or even if, the trial court used an incorrect amount for John's income in ascertaining the child support amount. Nonetheless, it is indisputable that over the course of this lengthy action, Janet did not file any motion alleging error by the trial court regarding its child support orders, nor did she make a motion for additional findings after the entry of the judgment.

John's response is that Janet only took exception to one part of the order regarding child support, i.e., whether John had overpaid child support in November and December 2000. Further, he maintains that the record supports the trial court's decision regarding child support.

 The determination of child support, as with most domestic relations law, lies within the discretion of the trial court as long as it complies with statutory parameters. *Van Meter v. Smith*, 14 S.W.3d 569, 572 (Ky.App.2000). Moreover, the law in Kentucky has long supported that a

---

2. Janet does not cite to the record to highlight where this worksheet is located (on page 205 of the certified record).

trial court has broad discretion in determining the appropriate amount of child support owed by a parent.

As stated previously, findings of fact shall not be set aside unless they are clearly erroneous and due regard shall be given to the trial judge's opportunity to judge the credibility of witnesses. CR 52.01. Here, we find no basis in the record to disturb the trial court's findings of fact. And an abuse of discretion occurs only if the trial court's "decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky.App. 2001). We deem that the trial court's decision was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles and that it had the discretion to weigh the testimony and make that decision. The trial court's order for the payment of back child support stands.

## CONCLUSION

We have reviewed the record and the trial court's findings that deal with the property's division and assignment of debt; we find no clear error. The property and debt may very well have been divided or valued differently; however, it is still within the sound discretion of the trial court to make that decision. Further, we find no clear error in the findings regarding the child support obligation and, therefore, the trial court did not abuse its discretion.

The decision of the Taylor Circuit Court is affirmed.

ALL CONCUR.