RENDERED: JUNE 18, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0061-MR

JACK HURST                                                          APPELLANT

v.
APPEAL FROM NELSON CIRCUIT COURT
HONORABLE CHARLES C. SIMMS, III, JUDGE
ACTION NO. 14-CI-00691

THOMAS M. GREER                                                     APPELLEE

OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CALDWELL AND COMBS, JUDGES.

CALDWELL, JUDGE:  Jack Hurst (Hurst) appeals from a Nelson Circuit Court judgment awarding damages to Thomas M. Greer (Greer) recoverable from a *supersedeas* bond posted by Hurst upon Hurst's prior, unsuccessful appeal.  For the reasons stated herein, we affirm the trial court's award of a monetary judgment to Greer, but we vacate that portion of its judgment directing the Nelson Circuit Court Clerk to simply release the *supersedea*s bond to Greer and his counsel if the judgment is affirmed on appeal.

# FACTS AND PROCEDURAL HISTORY

Hurst and Greer previously had a business relationship related to the sale or exchange of farm equipment. Hurst filed a lawsuit against Greer, alleging Greer wrongfully retained possession of certain farm equipment after their relationship soured. The parties reached a written settlement agreement shortly before a scheduled bench trial. However, both parties later alleged that the other failed to comply with the agreement.

The trial court held it would enforce their settlement agreement and ordered Hurst to return six combines and some parts then in Hurst's possession to Greer. Hurst stated his intent to appeal and his desire to keep the combines. So, the trial court told him he would have to post a *supersedeas* bond to stay enforcement of its judgment.

The trial court entered an order setting the *supersedeas* bond at $17,360[1] and requiring that Hurst either post the *supersedeas* bond or return the combines to Greer within ten days. The trial court's order also stated that if Hurst's appeal was unsuccessful, Greer "shall be allowed to take either the supersedeas bond or the six remaining combines and parts."

---

[1] As explicitly stated in its order, the *supersedeas* bond was set at $17,360 based on the sum of the fair market value of the equipment at issue ($15,500 according to the trial court's findings) plus six percent interest on the fair market value for two years ($1,860). Apparently, the trial court anticipated that an appeal would take two years. Hurst did not claim that the amount of the *supersedeas* bond set by the trial court was excessive in the first appeal.

Hurst posted the *supersedeas* bond (paying $17,360 into court via cashier's check without a surety) and appealed. We noted in our Opinion Affirming in the first appeal that Hurst claimed error because the trial court declared "that if Hurst failed to prevail on appeal, Greer could enforce his judgment against the *supersedeas* bond." *Hurst v. Greer*, No. 2017-CA-1396-MR, 2018 WL 4847078, at *3 (Ky. App. Oct. 5, 2018). We took note of Hurst's request that the Court of Appeals provide specific instructions to the trial court about how to properly enforce its judgment if affirmed on appeal. But, we declined to provide the requested instruction because issues about enforcing the judgment had not yet been presented to or ruled upon by the trial court.

Additionally, we recognized that the trial court had not determined the amount of Greer's damages from the delay caused by the appeal, *see* CR[2] 73.04, or how much Greer could actually recover on the bond since Greer had not yet filed a motion to enforce the judgment:

> Pursuant to the requirements of CR 73.04, Hurst's bond provides that it is sufficient to satisfy the judgment together with interest, costs, and damages resulting from the delay caused by the appeal and such further interest and costs, including costs of the appeal as this Court may adjudge. The bond provides that Hurst's liability may be enforced upon notice and motion. For the obvious reason of the delay occasioned by this appeal, the amount of Greer's damages has not been established, and he has not yet moved the circuit

---

[2] Kentucky Rules of Civil Procedure.

court to enforce his judgment against the bond. Consequently, the trial court has yet to rule on the amount of damages recoverable on the bond.

We are persuaded that the circuit court is well aware of the requirements of CR 73.07 and the proper measure of damages. Thus, our intervention in proceedings that have yet to be conducted is not warranted.

*Id*. at *4.

After the Kentucky Supreme Court denied Hurst's motion for discretionary review, our Opinion in the first appeal became final in early 2019. Greer then filed a motion with the trial court to release the *supersedeas* bond to him. Hurst objected, and both parties filed briefs on the issue.

Quoting portions of our Opinion in the first appeal, Hurst argued that Greer should not simply recover all *supersedeas* bond funds since Greer's damages from the delay had not yet been determined. He cited authority indicating that the proper measure of damages for the delay would be the difference between the fair market value of the property when the bond was posted and its fair market value after the appeal. He further asserted that the scrap value of the combines may have actually increased during the first appeal. After a hearing, the trial court then issued a written order about what would happen next to resolve such issues.

The trial court recognized that Greer no longer wanted the combines, which had been exposed to the elements for two years during the appeal. It

-4-

referred to findings in its August 14, 2017 judgment that the fair market value of the combines and parts was $15,500 when Hurst was ordered to return them to Greer. As a result, the trial court ordered that a Master Commissioner sale must take place to establish the current fair market value of the combines. In its order the trial court further ordered: "Greer would then be entitled to the sale proceeds, plus the difference in the fair market values ($15,500 less the sale proceeds)" and that Hurst would be responsible for the costs of the sale since he caused the two-year delay.

The trial court also stated that Hurst could retain the combines and parts if the *supersedeas* bond were released to Greer and his counsel, after suggesting that calculating damages for delay was unnecessary and that Greer was simply entitled to the entire amount secured by the *supersedeas* bond:

> When this Court entered its Order of August 14, 2017, it clearly recognized that Greer would ultimately be entitled to a total sum of $15,500 for his interest in the six combines and parts, plus interest. The simplest way to resolve this case following Hurst's unsuccessful appeal is to allow Greer to take the *supersedeas bond*. As grounds, Greer will ultimately recover the same amount ($15,500) for the combines and parts following a Master Commissioner sale, plus interest for the two year delay. However, if Hurst wants to be obstinate, this Court will certainly allow him to do so as it calculates Greer's damages.

After a hearing to establish the terms and conditions of the Master Commissioner sale, the trial court entered an order on August 23, 2019, setting the

-5-

Master Commissioner sale for September 11, 2019. It further directed the Master Commissioner to advertise the equipment being sold one time at least seven days before the sale.

In another order, the trial court noted that the Master Commissioner reported concerns that the machinery's value may have declined due to some missing parts and a foul odor coming from the machinery. It further provided that the parties could submit affidavits about whether the conditions reported by the Master Commissioner had arisen after the trial court calculated the amount of the *supersedeas* bond in its August 14, 2017 judgment.

Greer filed an affidavit describing additional parts having been removed from the equipment and other physical damage occurring from exposure and normal "wear and tear" deterioration. He also averred that Metropolitan Sewer District (MSD) fertilizer had been placed on the equipment, likely by Hurst, which caused it to develop the foul odor. Hurst also filed an affidavit, denying that he dumped MSD fertilizer on the machinery and suggesting that Greer was responsible for any damage to the machinery.[3]

After the trial court denied Hurst's motion for a continuance of the sale, the Master Commissioner sale took place as scheduled. Although several

---

[3] Greer's affidavit was filed a few days before the Master Commissioner sale and Hurst's affidavit was filed a couple of weeks after the sale as the trial court had ordered that if Greer chose to file an affidavit, Hurst would then have twenty days to file his affidavit in response.

-6-

other people were in attendance, Greer was the only one who bid on the equipment. His bid was for a total of $7 for all the equipment at issue—six combines and some parts.

The trial court entered an order confirming the sale. Shortly thereafter, Hurst filed a motion for the trial judge to recuse on the basis of bias. The trial court conducted a hearing on all pending issues in late November 2019.

In late December 2019, the trial court entered a final order denying the motion for recusal and further providing that the Master Commissioner pay the $7 sale proceeds to Greer and that Greer be awarded a judgment against Hurst for $15,493 damages plus six percent interest commencing August 14, 2017 (the date of the original judgment from which Hurst first appealed). The order also provided: "That if the plaintiff, Jack Hurst is unsuccessful on appeal, the Nelson Circuit Clerk shall release the *supersedeas bond* to the defendant, Thomas M. Greer, and his attorney."

Hurst now appeals from this second judgment in Greer's favor.[4] We consider the issues he raises in his brief in the order he presents them. Further facts will be provided as necessary in discussing these issues.

---

[4] Following Hurst's filing of his notice of appeal, Greer filed a motion to increase the *supersedeas* bond further which the trial court granted. But Hurst has not clearly raised any issues in his brief about the trial court's granting the motion to increase the *supersedeas* bond.

## ANALYSIS

We must first address Hurst's failure to comply with the requirement that a brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(v). We advise counsel to take greater care to comply with applicable rules in future appellate briefs.[5]

To the extent that it appears the alleged errors are not properly preserved for our review based on the record before us, we review such issues only for palpable error under CR 61.02. We further note that transcripts or video recordings of hearings were not made a part of the record on appeal. *Smith v. Smith,* 450 S.W.3d 729, 732 (Ky. App. 2014).

*Factual Findings Regarding Damages From Delay Not Clearly Erroneous*

Hurst begins his argument by asserting that the trial court issued clearly erroneous factual findings regarding the damages incurred by Greer. He suggests that Greer did not, in fact, suffer any damage and that there is a lack of evidence of damage to property eventually received by Greer. Based on our

---

[5] We direct counsel's attention to the Basic Appellate Practice Handbook available at the Kentucky Court of Justice website at https://kycourts.gov/Courts/Court-of-Appeals/Documents/P56BasicAppellatePracticeHandbook.pdf (last visited May 5, 2021). Although we decline to take such drastic actions here in part because of other citations to the record in Hurst's statement of the case and argument, we have the authority and discretion to review issues only for manifest injustice and to strike briefs entirely or in part for failure to fully comply with CR 76.12 requirements. *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).

review of the record, he made this position known to the trial court through documents filed in the written record. Though this issue appears to be at least arguably preserved, we disagree with Hurst's assertion that the trial court's findings of damage occurring to the equipment at issue are clearly erroneous.

Hurst's and Greer's affidavits constitute conflicting evidence regarding the existence and cause of any damages incurred during the delay resulting from the appeal. As for any other testimony or evidence presented in hearings to the trial court, no recordings or transcripts of such hearings were provided to us in the record on appeal for our review. It is the appellant's responsibility to make sure the record is complete, and we must assume that any portions of the record not provided to us support the trial court's decision. *Smith*, 450 S.W.3d at 732.

Upon review of the record before us, we cannot say that the trial court's finding of damage to the equipment was clearly erroneous, meaning unsupported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 353-54 (Ky. 2003). Greer's affidavit was substantial evidence supporting a finding that the equipment at issue had been damaged during the delay.

As there is substantial evidence supporting the trial court's finding of damage to the equipment, we will not disturb this finding despite conflicting evidence since "judging the credibility of witnesses and weighing evidence are

-9-

tasks within the exclusive province of the trial court." *Id.* at 354. *See also* CR 52.01 ("Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").

*No Reversible Error Regarding Master Commissioner Sale*

Next, Hurst raises several complaints about the Master Commissioner sale. Generally, issues about a trial court order setting the terms of a judicial sale are subject to an abuse of discretion standard of review. *See Sterling Grace Mun. Securities Corp. v. Central Bank & Trust Co.*, 926 S.W.2d 670, 673-74 (Ky. App. 1995) (holding issue of whether to establish a minimum bid for a judicial sale was within the trial court's discretion and concluding that trial court had not abused its discretion in that case in not establishing such a minimum bid). Similarly, issues about a trial court order's confirming or setting aside a judicial sale are also reviewed for abuse of discretion. *Lerner v. Electronic Mortgage Registration Systems, Inc.*, 423 S.W.3d 772, 773 (Ky. App. 2014).

Hurst's first complaint with the Master Commissioner sale is that it took place less than three weeks after the order scheduling the sale. Hurst states in his brief that he objected at a hearing—for which we were provided neither a supporting citation to the record nor a transcript or recording of the hearing.

Similarly, he also states in his brief that he filed a motion requesting rescheduling—again failing to provide a specific citation to the record.

From our review of the written record, the trial court entered an order in mid-August 2019 setting a hearing on August 21st for the parties, their counsel, and the Master Commissioner to discuss the terms and conditions of the sale. On August 23rd, it entered an order setting the sale for September 11th after noting that the parties and counsel had appeared before it to discuss the terms and conditions of the sale. In another order the same day, the trial court stated that the parties would be allowed to file affidavits about whether or how parts went missing and the stench that arose after the August 14, 2017 judgment.

On September 5th, 2019, Hurst filed a motion requesting that the September 11th sale be postponed so the parties would have time to file affidavits and the equipment at issue could be fully inspected before the sale. In this motion, he also stated he would be willing to pay the cost of a new notice of sale. The trial court denied the motion.

Based on the record before us, we see no indication that Hurst cited any authority to the trial court requiring it to set a sale date more than three weeks in advance. Nor has Hurst cited any authority to this Court supporting that proposition in his appellate brief. Furthermore, based on the record before us, at best Hurst raised any issues concerning the timing of the sale only **after** the trial

court set a sale date **following** a hearing to discuss terms and conditions of the sale with the parties and counsel. Considering the lack of authority cited for any requirement for further notice of a Master Commissioner sale and the somewhat questionable preservation of this issue, we discern no abuse of discretion in the trial court's setting the sale date and denying the motion to postpone it.

Hurst also argues in his appellate brief that the sale was improperly conducted and resulted in an inadequate sale price for the equipment. Ultimately, he contends that the trial court should have set aside the sale rather than confirming it. However, based on his own description of the procedural history in his argument (unfortunately again unsupported by references to the record), this issue is clearly not properly preserved for our review. So, we review only for palpable error pursuant to CR 61.02.

The trial court entered its order confirming the Master Commissioner sale on September 20, 2019. Hurst admits he did not file a motion to set aside the sale in his brief. Instead, he asserts that he asked the trial court to return the balance of the *supersedeas* bond to him—unfortunately, once again without a supporting reference to the record.

Based on the record before us and applicable law, we discern no palpable error as defined by CR 61.02 in the trial court's confirming the sale rather than setting it aside *sua sponte* as Hurst evidently believes it should have done.

-12-

*See also Sterling Grace*, 926 S.W.2d at 673. ("Whatever the value of the property, it has long been the rule in this jurisdiction that mere inadequacy of price is an insufficient ground for setting aside a judicial sale.").

Also, within the same section of his brief regarding the sale, Hurst takes issue with the accuracy of the trial court's findings in other orders that the combines had lost nearly all of their value due to being left outside, their bad smell, and its finding that Greer no longer wanted the combines. Hurst argues that since Greer bought the combines at the judicial sale and incurred the cost of moving them and even later sold some parts for money, the trial court was wrong to find Greer no longer wanted them. He also finds fault with the trial court's finding that Hurst could have protected his own interest in the combines by bidding on them at the sale. Assuming *arguendo* that such issues have been properly preserved, any errors in these findings were harmless. *See* CR 61.01 (trial court should not be reversed for any error which is not "inconsistent with substantial justice" and errors not affecting the parties' substantial rights must be disregarded).

In short, we discern no abuse of discretion or other reversible error in the trial court's orders regarding the Master Commissioner sale.

*Central Issue of Appeal Is Propriety of Award of Monetary Damages to Greer*

The parties both discuss the award in terms of the *supersedeas* bond. Greer cites authority indicating an abuse of discretion standard of review is

applicable to questions involving *supersedeas* bonds.  *See Industrial Redistribution Center, Inc. v. Plastipak Packaging, Div. of Beatrice Foods Co.*, 706 S.W.2d 2, 3 (Ky. App. 1986) (a trial court ruling on a CR 73.06 challenge to the sufficiency of *supersedea*s bond or surety is reviewed for abuse of discretion).  But we construe Hurst's arguments to be a challenge to the award of a monetary judgment to Greer, not a challenge to the amount of the *supersedea*s bond set by the trial court.

In reviewing the trial court's award of a monetary judgment to Greer, we review underlying factual findings for clear error and determinations of matters of law *de novo*.  *See generally Payton v. Commonwealth*, 327 S.W.3d 468, 471-72 (Ky. 2010) (factual findings reviewed for clear error, conclusions of law reviewed *de novo*).

## I.  Any Error in Awarding $7 Sale Proceeds to Greer is De Minimus and Does Not Require Relief on Appeal

Hurst asserts that the trial court awarded, and Greer received, "the combines and the money he paid for the combines at the sale and the entire supersedeas bond."  (Appellant's brief, p. 8.)  Greer denies that he was awarded everything Hurst asserts:

> Hurst seems to argue in his brief that the Court awarded the supersedeas <u>and</u> the combines to Tom Greer.  The judge did award the supersedeas bond to Greer but he did not award the combines themselves.  Greer bought these combines at a public sale that was advertised in the local paper and were sold in the courthouse parking lot.  The

> trial court certainly never awarded these combines to Greer.

(Appellee's brief, p. 8.)

Though the trial court may not have directly and explicitly awarded the combines to Greer in the judgment on appeal here,[6] the provision directing the Master Commissioner to pay the $7 sale proceeds to Greer effectively results in Greer getting his purchase money back and obtaining the combines for free—not paying consideration for or buying the combines.

Still, to the extent that the trial court erred in providing the $7 in Master Commissioner sale proceeds must be paid to Greer, no relief on appeal is compelled under the *de minimus* rule given the extremely minimal amount of sale proceeds and the lack of shocking injustice or important legal principle at stake in this appeal. *See Clark v. Mason*, 264 Ky. 683, 95 S.W.2d 292, 296 (Ky. 1934) (discussing concept of *de minimis non curat lex*—meaning minor errors with only a trivial effect on the amount of recovery do not generally merit relief unless matters of great injustice or important legal principles are at stake).

---

[6] In contrast, the trial court essentially afforded Greer the remedy of specific performance (delivery of the combines to him) by order dated July 7, 2017. It did not state that Greer was awarded a judgment of monetary damages. After the trial court denied Hurst's motion to alter or amend or vacate the July 7 order, it set the *supersedeas* bond amount in part based upon its finding of the fair market value of the combines, but it did not award Greer a judgment for monetary damages via its August 14, 2017 order which we affirmed in the prior appeal.

-15-

## II.  Award of Monetary Judgment to Greer Is Not Reversible Error

Despite both parties referring to the trial court "awarding" Greer the *supersedeas* bond, the trial court did not award the *supersedeas* bond to Greer. Nor did it order a release of the bond prior to resolution of this appeal.  Instead, in its December 2019 final and appealable order, it awarded Greer a judgment of $14,593 plus interest commencing August 14, 2017.  Whether or not the amount of this award is close to the amount of the *supersedeas* bond posted, the award is not the same thing as the *supersedeas* bond.  *See Stars Interactive Holdings (IOM) Ltd. v. Wingate*, 594 S.W.3d 181, 185 (Ky. 2020) (recognizing that a *supersedeas* bond is essentially a promise to pay a judgment if it is affirmed on appeal).[7]

Furthermore, the trial court's award to Greer of a judgment for $15,493 plus interest commencing August 14, 2017, following Hurst's prior unsuccessful appeal did not amount to reversible error under the facts and procedural history here.

Hurst asserted to the trial court and to us that the measure of damage for the delay resulting from the appeal is "the difference between the amount the property would have sold for when the bond was given and the amount it did sell

_____

[7] As a *supersedeas* bond is a promise to pay a judgment, the promisor (here Hurst) alone would seek release **from** this bond after satisfying the judgment.  Although appellee Greer filed a motion asking for release of the *supersedeas* bond **to** him, this would more accurately be termed a motion to release *supersedeas* bond **funds** to him or better yet a motion to enforce the judgment.

for." (Quoting *Sotak v. Sotak*, 438 S.W.2d 490, 492 (Ky. 1969).) According to him, "[t]here is no credible evidence that the combines would have sold at the courthouse steps for more than $1.00 if a sale had been conducted prior to the appeal." (Appellant's brief, p. 9.) He also points out that after buying the combines and parts at the Master Commissioner sale, Greer re-sold some of these items a couple of months later for $2,000 after spending money to move the combines and parts from the courthouse.

Despite these arguments, the trial court's finding that the items had a fair market value of $15,500 prior to the first appeal was supported by substantial evidence—witness testimony cited in its order setting the amount of *supersedeas* bond upon the first appeal. (We further note that Hurst did not challenge the amount of this bond or the trial court's finding of the fair market value of the combines in his first appeal.) Similarly, the trial court's finding that the items had a fair market value of $7 after the first appeal based on what they sold for at the Master Commissioner sale was supported by the Master Commissioner's reports and Greer's affidavit testimony about how the combines were now missing further parts or otherwise damaged and had developed a stench after MSD fertilizer was apparently put on them.

As the trial court's findings about the before and after values were supported by substantial evidence, and as the trial court applied the measure of

damages for delay according to authority cited by Hurst, we see no reason to disturb its award of $15,493 plus interest commencing August 14, 2017. Despite Hurst's argument that Greer actually suffered no damages from the delay resulting from the prior appeal,[8] there was substantial evidence to support the trial court's finding that the items at issue had lost all but a very small amount ($7) of their prior value during or shortly after the first appeal due to missing parts and the stench of MSD fertilizer dumped on them.

Furthermore, Hurst cites no authority requiring that the fair market value of items before and after appeal must be determined in the exact same manner. And though Greer later re-sold some items for $2,000 (possibly after cleaning, repairing, and/or delivering them to others), that is not relevant to determining their value immediately after resolution of the first appeal when Hurst delivered them to the courthouse with parts missing and stinking of MSD fertilizer. In short, the judgment awarded to Greer for $15,493 plus interest commencing August 14, 2017, was based on factual findings that were not clearly erroneous and does not reflect an erroneous determination of questions of law nor an abuse of discretion.

---

[8] Hurst cites an unpublished case as support for the argument that to recover damages for delay resulting from the appeal, actual damages must be shown. But unpublished cases are not binding authority, and Hurst's brief fails to fully comply with requirements for the citation of unpublished cases set forth in CR 76.28(4)(c)—for example, no copy of the unpublished case was provided in the appendix to his brief. In any event, we conclude that evidence of record supports the finding of actual damages resulting from the delay resulting from the first appeal.

-18-

*Provision Directing Clerk to Release Supersedeas Bond Funds to Greer Without*
*Proper Notice and Motion to Enforce Judgment Is Vacated As Contrary to Law*

Although we affirm the award of monetary damages, we cannot let stand the portion of the trial court's judgment stating: "That if the plaintiff, Jack Hurst is unsuccessful on appeal, the Nelson Circuit Clerk shall release the *supersedeas bond* to the defendant, Thomas M. Greer and his attorney." This provision is contrary to law—particularly to the extent that it connotes that all funds posted with the *supersedeas* bond automatically be paid to Greer if the judgment is affirmed on appeal.

Instead, as discussed in our prior Opinion, and as stated on the face of the *supersedeas* bond document executed by Hurst, Hurst's liability may be enforced upon proper notice and motion. Upon such notice and motion, the trial court must then conduct proceedings accordingly to determine what amount is ultimately due to Greer, including damages resulting from the delay and calculating interest accrued from August 14, 2017, through the date of its resolution of the motion.

Greer may recover the amount ultimately due him from Hurst whether from the *supersedeas* bond funds posted or from another source. If the amount due Greer is paid with *supersedeas* bond funds but the amount of the *supersedeas* bond posted exceeds the amount Greer is ultimately due, Hurst would be entitled to a refund of the remainder of the funds posted by him. If, on the other hand, the

-19-

*supersedea*s bond is insufficient to pay the entire amount due to Greer, Hurst would be responsible for the additional amount due as well.

Thus, we vacate that portion of the trial court's judgment which directs the circuit court clerk to simply release the *supersedeas* bond funds to Greer upon affirmance of its judgment.  On remand, the judgment we otherwise affirm herein may be enforced on proper notice and motion in conformity with this Opinion.

*No Reversible Error from Trial Court's Denial of Recusal Under Facts Here*

Currently, the applicable standard for reviewing a trial court's ruling on a motion for recusal is abuse of discretion.  *Clay v. WesBanco Bank, Inc*, 589 S.W.3d 550, 557 (Ky. App. 2019); *Minks v. Commonwealth*, 427 S.W.3d 802, 806 (Ky. 2014).[9]

KRS[10] 26A.015 provides in pertinent part that:

(2) Any justice or judge of the Court of Justice or master commissioner shall disqualify himself in any proceeding:

(a) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings, or has expressed an opinion concerning the merits of the proceeding;

---

[9] The Kentucky Supreme Court recently expressed an intention to shift to a *de novo* standard of review for rulings on motions for judicial recusal in a recent, not-yet-final, opinion designated for publication.  *See Abbott, Inc. v. Guirguis*, ___S.W.3d ___, 2021 WL 728860, at *5 (Ky. 2021) (petitions for rehearing and for modification or extension are currently pending according to our records as of May 5, 2021).

[10] Kentucky Revised Statutes.

. . .

> (e) Where he has knowledge of any other circumstances
> in which his impartiality might reasonably be questioned.

Hurst contends that the trial judge should have recused based on bias and the judge's allegedly trying to get the case settled at the last hearing via "individual discussions held off the record with each party individually . . . ." (Appellant's brief, p. 10.) He asserts he requested that the judge recuse, but his brief fails to make specific supporting references to the record to show how or where this occurred. And as no transcripts or video recordings of court proceedings were included with the record on appeal, we cannot review them to help discern whether anything improper occurred at court hearings. Again, we must assume that missing portions of the record would support the trial court's ruling. *Smith*, 450 S.W.3d at 732.

From our review of the written record, Hurst did file a motion for the trial judge's recusal in late November 2019[11] prior to the last hearing before the trial court issued its final and appealable order in late December 2019. As grounds for seeking the trial judge's recusal, Hurst stated only his general belief that the trial court had a bias against him and that Hurst had incurred $6,550 expenses in

---

[11] Though not required to preserve the issue of whether the trial judge erred in denying the recusal motion under KRS 26A.015, we note that Hurst did not file an affidavit concerning the grounds for recusal and request that the Chief Justice of the Supreme Court determine whether the trial judge must be disqualified pursuant to KRS 26A.020.

hauling the equipment to the courthouse for the sale and "erroneous sell charges of $1,021."

In his appellate brief, Hurst argues bias is shown by the trial court's using punitive language when referring to him, especially expressing annoyance at Hurst's exercising his right to appeal rather than simply handing over the combines. He also contends that the trial court developed a bias against him after handling litigation involving Hurst and his family over many years. Further, he alludes to the trial court discussing the case with each party individually to reach a settlement at the last court hearing and to "individual discussions held off the record with each party individually [making] it improper for the trial judge to remain on the case following the lack of agreement at that time."

From our review of the written record, the trial judge did seemingly express some frustration with Hurst such as frequently referring to Hurst's "shenanigans" in its orders. But such expressions of frustration or disapproval of certain actions do not necessarily show that a judge is biased against a party and must recuse. *See Stopher v. Commonwealth*, 57 S.W.3d 787, 794-95 (Ky. 2001) (despite trial court's exasperation at defendant's last-minute filings of duplicative motions, record showed that defendant received a fair trial and there was no showing of facts seriously impairing the judge's impartiality or swaying his judgment).

More troubling to us are statements in the trial court's orders which could be construed to suggest that Hurst's filing an appeal or asking for a proper determination of damages—rather than just acquiescing to the release of all *supersedeas* bond funds to Greer—would be held against him. Nonetheless, other than any error in awarding the extremely minimal sale proceeds ordered paid to Greer and problematic directions to the clerk about simply releasing the *supersedeas* bond (and presumably all funds posted with it) to Greer if Hurst did not prevail on his second appeal, the trial court's award of judgment to Greer was proper and in conformity with the law. We do not conclude that Hurst has shown reversible error in the trial court's denial of recusal based on the record before us.

The fact that the trial judge had admittedly frequently dealt with Hurst and his family did not necessarily show that the trial judge was biased against Hurst. Particularly in small communities, it is not unusual that the same trial judge might have handled several cases involving a litigant and his/her family. Generally, justice does not demand that a judge must recuse based solely on a prior history of adjudicating disputes involving a litigant and his/her family—especially since we have recognized that judges have a duty to serve unless there are clear reasons for recusal or disqualification. *Clay*, 589 S.W.3d at 557.

Although the trial judge noted prior history with Hurst and his family in written orders, he did not expressly state any concerns with it impairing his

impartiality or swaying his judgment. *See Stopher*, 57 S.W.3d at 794. In fact, the trial judge stated this prior history would have no effect on his ability to be fair and impartial. Thus, under the facts shown on the record before us, we do not believe that the trial judge's prior history of adjudicating disputes involving Hurst and his family rose to the level of necessitating the trial judge's recusal.

Nor do we believe that Hurst has shown bias or other circumstance requiring recusal based on alleged improper discussions with parties and counsel on the record before us. It is difficult for us to discern the nature of the trial judge's discussions with each litigant about settlement efforts during hearings which Hurst alleges in his brief—especially since we were not provided with transcripts or recordings of the hearings to review. If, for example, the trial court merely asked counsel or the parties individually on the record in open court whether they had tried to settle the case or suggested that settlement would prevent the need for further proceedings or delay on appeal, that would not be improper.

We certainly do not condone any improper *ex parte* communications between parties and judges, so Hurst's allegation in his brief of the trial judge having "individual discussions held off the record with each party individually" is potentially more troubling. But the nature of the trial court's discussions with the parties is not clear from the general allegations in Hurst's brief. And under certain circumstances, *ex parte* communications are not prohibited. "A judge may, with

the consent of the parties, confer separately with the parties and their lawyers in an effort to settle matters pending before the judge." Canon 2, Rule 2.9(A)(4) of the Kentucky Code of Judicial Conduct (SCR[12] 4.300).

Furthermore, judges are permitted to have *ex parte* discussions about non-substantive matters such as scheduling under specified conditions and to have *ex parte* communications otherwise "expressly authorized by law[.]" Canon 2, Rule 2.9(A)(5) of the Kentucky Code of Judicial Conduct (SCR 4.300). Without supporting references to the record—which would enable us to see if parties explicitly consented to separate settlement discussions with the judge, for example—we cannot conclude that the trial court engaged in improper conduct or should have recused based on the general, unsupported allegations of Hurst's brief.

In short, based on our review of the record before us and applicable law, we discern no reversible error in the trial court's denial of Hurst's recusal motion whether we review for abuse of discretion or *de novo*.

Further arguments in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

<u>CONCLUSION</u>

For the reasons stated herein, we vacate that portion of the judgment on appeal here which directs the circuit court clerk to release to Greer the

---

[12] Kentucky Supreme Court Rules.

*supersedeas* bond if the trial court's judgment is affirmed upon appeal, but we otherwise affirm the Nelson Circuit Court's judgment.

ALL CONCUR.


BRIEF FOR APPELLANT:

Dawn L. McCauley
Lebanon, Kentucky

BRIEF FOR APPELLEE:

William T. Hutchins
Bardstown, Kentucky