Jennifer RICE, Appellant

v.

Willard RICE, Appellee.

No. 2011–CA–002162–ME.

Court of Appeals of Kentucky.

July 6, 2012.

Acena Beck, Covington, KY, for appellant.

Bryan Underwood, Maysville, KY, for appellee.

Before COMBS, DIXON and VANMETER, Judges.

## OPINION

VANMETER, Judge:

Jennifer Rice appeals from the October 27, 2011, order of the Bracken Circuit Court which denied her motion to alter, amend or vacate its order adopting the report of the Domestic Relations Commissioner (DRC) which designated her former husband, Willard Rice, primary residential custodian of the couple's three minor children during the school year. Jennifer contends that the trial court abused its discretion by refusing to grant her physical custody of the children and that the trial court's order naming Willard primary custodian of the children during the school

year is palpable error and should be reversed. We disagree and affirm the trial court's order.

Jennifer and Willard were married in 2001 and separated in 2008. Willard filed a petition to dissolve the marriage on January 26, 2009. At that time, the parties' three minor children were being homeschooled by Willard's mother, who lives next door to the marital residence. In February 2009, the parties agreed to grant Willard temporary custody of the children so that the children could finish their homeschooling.

The couple's November 2009 Separation Agreement specified that beginning in January 2010, the parties would share joint custody of the children and that the children would continue to be homeschooled. The Agreement provided that the children would be homeschooled by their paternal grandmother when in Willard's custody and by Jennifer when she had custody.

In October 2010, Jennifer filed a motion for change of custody. She requested that the court designate her as the primary residential custodian and issue an order requiring the children to attend public school, citing difficulties in homeschooling children at different grade levels and recent assessments conducted by the Sylvan Learning Center revealing that the children were not functioning at their present grade level.

The trial court assigned a Guardian Ad Litem (GAL) to represent the children. On December 17, 2010, after visits to both residences and interviews with all parties involved, the GAL concluded that either household was appropriate for the children and that both parents would be suitable as residential parents. The GAL recommended that Jennifer be designated primary custodian, mainly because he believed attending public school would be more beneficial to the children than being homeschooled and that Jennifer had a greater desire to make the arrangement for the children to attend public school.

After submission of the GAL report, the parties agreed that the children would attend public school regardless of which parent was designated primary custodian. Both parents desired to be named primary residential custodian, but the distance between the parents made joint custody during the school year impractical, so the court referred the case to the DRC.

The DRC filed an extensive report on August 6, 2011, determining that the interests of the children would best be served if they resided with Willard during the school year and visited Jennifer three out of four weekends each month. The DRC found that although Jennifer was a good mother and was interested in the well-being of the children, allowing the children to live with Willard during the school year would allow them to remain in or near the marital home where they grew up, and to be in the presence of their paternal grandparents, Linda and Robert Rice, who have babysat the children the majority of their lives. Additionally, the DRC found that Willard holds a long-term job and lives in a stable home whereas Jennifer is not employed, does not own a vehicle and has unstable living arrangements.

■ Trial courts have broad discretion regarding DRC reports. *Eiland v. Ferrell,* 937 S.W.2d 713, 716 (Ky.1997). CR[1] 53.06(2) provides that "[w]ithin ten days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties.... The court ... may adopt the re-

1. Kentucky Rules of Civil Procedure.

port, or may modify it, or may reject it in whole or in part[.]" After more than ten days passed without either party filing objections to the DRC report, the trial court adopted the DRC's recommendations, noting that the evidence and extensive findings of the DRC supported the recommended judgment. The court entered an order confirming the DRC's report on September 1, 2011. On September 14, 2011, Jennifer filed a motion to permit her to file objections to the DRC's report. However, instead of filing objections, she filed the present motion to alter, amend or vacate the court's order and for more specific findings, alleging that the DRC's findings did not support naming Willard primary custodial parent. Jennifer also claimed that the DRC's findings and the GAL's report supported her contention that the best interests of the children would be served if she were designated primary residential parent.

On October 27, 2011, the trial court denied Jennifer's motion to alter, amend or vacate its order and for more specific findings and reaffirmed the order confirming the DRC's report. This appeal followed.

■ Even though Jennifer failed to make timely objections to the DRC's report, she is not precluded from raising a palpable error claim on appeal pursuant to CR 61.02. The Kentucky Supreme Court has held that CR 61.02 "plainly states that a claim of palpable error may be considered by an appellate court even though the issue was not presented to the court below." *Herndon v. Herndon*, 139 S.W.3d 822, 827 (Ky.2004). A palpable error is one that is "easily perceptible, plain, obvious and readily noticeable." *Burns v. Level*, 957 S.W.2d 218, 222 (Ky.1997) (citing BLACK'S LAW DICTIONARY (6th ed.1995)). Jennifer alleges that the trial court's granting custody of the children to Willard

during the school year is palpable error that should be reversed. We disagree.

■ For courts determining child custody arrangements, the applicable statute is KRS [2] 403.320(3), which permits a court to "modify an order granting or denying visitation rights whenever modification would serve the best interests of the child[.]" The Kentucky Supreme Court has set forth our standard for reviewing modification of child custody arrangements as follows:

> Every case will present its own unique facts, and the change of custody motion or modification of visitation/timesharing must be decided in the sound discretion of the trial court. This is true whether the child lives with one parent in an arrangement like a sole custody arrangement or whether there is equal timesharing or something in between. Since "serious endangerment" or "best interests" is not defined, it is left to the sound discretion of the trial court whether the party opposing [modification] has met his burden on either a modification of custody or visitation/timesharing.

*Pennington v. Marcum*, 266 S.W.3d 759, 769 (Ky.2008). An abuse of discretion generally "implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision." *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky.1994) (citations omitted). In child custody cases, appellate courts should determine whether the "findings of the trial judge were clearly erroneous or [whether the trial judge] abused his discretion." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky.2008).

■ Jennifer first claims that naming Willard primary custodian despite his work schedule gives the appearance of the trial court improperly favoring grandpar-

---

2. Kentucky Revised Statutes.

ents over parents. The record shows that Willard leaves home for work at 6:30 p.m. and does not return until 6:00 or 7:00 a.m. While he is gone, the children are watched by their paternal grandparents and the record discloses that at least until the marital home is remodeled, Willard and the children will reside at the grandparents' house as well. Yet, the mere fact that Willard and the children reside with the grandparents "does not alone mean that custody was actually awarded to the grandparents." *Jones v. Jones,* 577 S.W.2d 43, 45 (Ky.App.1979) (citations omitted).

■ Additionally, simply because Willard may be working during part of the time the children are in his custody does not mean that the court granted his parents custody of the children and does not justify replacing Willard as primary residential custodian. *See Burchard v. Garay,* 42 Cal.3d 531, 229 Cal.Rptr. 800, 724 P.2d 486 (1986) (holding that the trial court erred by finding that a parent who worked and entrusted the child to a babysitter provided inferior care compared to a non-working parent); *Gerber v. Gerber,* 337 Pa.Super. 580, 586, 487 A.2d 413, 416 (1985) ("[A] parent's work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his or her absence."); *Harris v. Harris,* 2010 WL 5344769 (Ky.App.2010) (holding that the mere fact that the mother was working during part of the time she has the children was insufficient to justify the father's requested change in visitation). Thus, the trial court did not improperly favor grandparents over biological parents and modification of the custody agreement on the basis of a work schedule alone is not warranted.

■■ Custody decisions involving two parents are governed by the best interests of the child standard and the applicable factors set forth in KRS 403.270(2). Relevant factors in this case include: the wishes of the children's parents; the wishes of the children; the interaction of the children with their parents, siblings, and any other person who may significantly affect the children's best interests; the children's adjustment to their home, school, and community; the mental and physical health of all individuals involved; and the information, records, and evidence of any domestic violence. KRS 403.270(2). Since both parents desire to be residential custodians and the wishes of the children are either unclear or divided, the best interests of the children are determined based on the remaining factors in KRS 403.270(2). Each applicable factor was specifically addressed in the DRC's report and unless one of the DRC's findings is shown to be "clearly erroneous," the trial judge did not abuse his discretion by deferring to the DRC's recommendations. *Frances,* 266 S.W.3d at 756.

■ Jennifer bears the burden of proving that the factual findings were clearly erroneous. *Pennington,* 266 S.W.3d at 769. She alleges that her living situation is stable and that the DRC erred by finding otherwise. We disagree. Jennifer has lived in three different residences in eleven months and her current living situation is guaranteed only through the kind gesture of a married couple rather than a lease. Finding such arrangement to be unstable is not clearly erroneous. *See Jones,* 577 S.W.2d at 45 (counting as evidence of instability the fact that the mother was unemployed and had moved three times in two years).

■ Jennifer also claims that the best interests of the children are not served by allowing the grandparents to watch them, citing ailing health on behalf of grandfather, Bob Rice, and an active Domestic Violence Order (DVO) against him. How-

454

ever, the DRC found that Bob is still able to sit and watch the children play outside and that Linda Rice is in good health. Additionally, the DVO against Bob Rice is addressed by the DRC report. After the order was served, no more instances of corporal punishment have occurred and the DVO is "in effect in this regard only." The GAL also reported that he was unable to uncover incidents of verbal or physical violence directed at the children and that corporal punishment did not appear to be the main form of punishment for the children. The GAL added as a disclosure that: "I am personally adamantly opposed to corporal punishment and I am biased against its use . . . I do not believe I would ignore evidence of excessive punishment if I thought it occurred." Based on our review of the record, we are unable to conclude that being watched by their grandparents is not in the best interests of the children since the DRC appears to have considered all relevant factors when deciding what living situation would be best for the children.

 After extensive interviews and interactions with all parties involved in this action, the DRC qualifies as an informed third party to make recommendations to the court about which living situation best serves the children's interests. Without clearly erroneous findings by the DRC, the trial court's adoption of its report and designation of Willard as primary residential custodian was not palpable error or an abuse of discretion. For the foregoing reasons, the Bracken Circuit Court's order denying Jennifer Rice's motion to alter, amend or vacate the court's order adopting the DRC report is affirmed.

ALL CONCUR.