RENDERED: MAY 3, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0383-MR

EUGENE SISCO, JR. AND
MARY ANN SISCO                                                    APPELLANTS

v.          APPEAL FROM PIKE FAMILY COURT
HONORABLE ALISON C. WELLS, SPECIAL JUDGE
ACTION NO. 21-CI-00374

EUGENE SISCO, III AND
AMBER HUNT SISCO                                                  APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND ECKERLE, JUDGES.

CETRULO, JUDGE: This is an appeal from a denial of visitation to grandparents.

The law is clear that parents have a superior right to determine the best interests of

their children, unless they are unfit to do so. Thus, we uphold the decision of the

family court which properly applied the factors of *Walker v. Blair*, 382 S.W.3d 862

(Ky. 2012), and its progeny and denied the petition for grandparent visitation

sought therein.

**FACTUAL BACKGROUND**

Eugene Sisco ("Grandfather") and Mary Ann Sisco ("Grandmother") (collectively referred to as "Grandparents") are the paternal grandparents of three minor children born to their son, Eugene Sisco, III ("Dad") and Amber Hunt Sisco ("Mom"). Grandparents first filed a petition for visitation on May 3, 2021. Dad and Mom thereafter filed a motion to dismiss. The regularly assigned judge recused, as both Grandfather and Mom are attorneys regularly practicing in that county. Thus, a special judge from Perry County was assigned.

The record does not reflect any activity in this action for over one year, but on June 3, 2022, Grandparents filed a motion for a hearing and a motion for appointment of a guardian *ad litem* ("GAL") for the children. Grandparents also sought to have a psychological evaluation of the two older children. Dad and Mom filed a motion to dismiss and sought sanctions. The family court, through the Domestic Relations Commissioner ("DRC"), denied the motion to dismiss and the motion for sanctions, denied the motion to appoint a GAL, and set the matter for a hearing. The order stated that the request for a psychological evaluation would be held in abeyance to determine if there was a need. After the family court entered that order, the matter proceeded to the DRC for a full hearing on "the standing of the [G]randparents and whether visitation would serve the best interests of the children." That hearing was conducted on November 28, 2022.

The DRC then tendered her recommendations to the family court on March 7, 2023, concluding that visitation was not in the best interests of the children and presuming that the parents were fit. Neither party filed exceptions to the recommendations, as required for actions heard by a DRC. Rather, the Grandparents filed a notice of appeal from the DRC's March 7 opinion and order. Thereafter, on March 27, 2023, the family court adopted and entered the DRC's March 7 opinion and order. This appeal followed.

We note other relevant events and occurrences in considering both the timeline and the relationship between these parties:

1.) At the time the Grandparents filed the petition for visitation, Mom and Dad were still married and residing together. In 2021, Dad was convicted of health care and wire fraud and sentenced to ten years in federal prison. He is currently incarcerated and as of December 2022, the parties are divorced. Mom has sole custody of the minor children, although Dad testified at the hearing that he, too, opposed the Grandparents' petition.

2.) Grandfather sold a business to his two adult children, Dad and his sister, Allie. In 2017, a lawsuit was filed between the siblings over the business, and Grandfather intervened in that

-3-

action. A judgment was awarded against Dad, which this Court upheld in September 2022. In 2021, Grandfather placed a judgment lien on property Dad owned.

3.) In 2018, Mom sought election as a district court judge, during which time Grandfather handed out flyers expressing his support for her opponent and informing voters that she had denied him a relationship with his grandchildren.

4.) Mom and Dad filed a petition in 2018 for a protective order against Grandfather which was dismissed.

5.) In 2020, Grandfather filed a complaint with the Kentucky Real Estate Commission against Mom and Dad.

6.) All parties agreed that Grandparents have had no contact with two of the grandchildren since 2017. The youngest child was not born until 2021.

7.) Both parties produced exhibits reflecting negative posts on social media about the other.

**STANDARD OF REVIEW**

This petition for grandparent visitation was filed pursuant to Kentucky Revised Statutes ("KRS") 405.021. Generally, we review the family court's findings of fact on appeal of such cases applying the clearly erroneous standard.

-4-

*Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986) (citing Kentucky Rule of Civil Procedure ("CR") 52.01). "A finding of fact is clearly erroneous if it is not supported by substantial evidence." *Sewell v. Sweet*, 637 S.W.3d 330, 334 (Ky. App. 2021) (citing *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003)). Substantial evidence is that which, "when taken alone or in light of all the evidence . . . has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* (citation omitted). Under such standard, we give due regard to the opportunity of the family court to judge the credibility of the witnesses. *Reichle*, 719 S.W.2d at 444 (citation omitted).

Further, the interpretation of KRS 405.021(1), which sets out the process by which a grandparent can seek visitation and the application of the appropriate standard to the facts is generally reviewed *de novo*. *Walker*, 382 S.W.3d at 867 (citation omitted).

Here, there are also other procedural irregularities that impact our standard of review. First, as noted, this matter was referred to the DRC for a full evidentiary hearing. That hearing is not part of the record on appeal and Grandparents did not designate it to be part of the record. Neither party referred to any specific portion of the hearing or evidence in their briefs. Thus, the record does not indicate whether the hearing was recorded. When it comes to the video record, it is the responsibility of the appellant to designate any hearings or

depositions to be included as part of the record on appeal. *Miller v. Armstrong*, 622 S.W.3d 661, 662 (Ky. App. 2021) (citation omitted) ("It is the responsibility of the appellant to see that the record is prepared and certified by the clerk within the time prescribed by this rule."). That was not done in this case and, therefore, limits our review.

Furthermore, the rules relating to use of a DRC are now found in Family Court Rule of Procedure and Practice ("FCRPP") 4. Subsection (4) of FCRPP 4 addresses reports by a DRC and provides that within ten days after notice of the filing of the report outlining the recommendations of the DRC, any party may serve written objections and have a hearing thereon before the circuit court. With respect to the DRC report, the family court may adopt, modify, or reject it, in whole or in part, and "may receive further evidence or may recommit it with instructions." *Haley v. Haley*, 573 S.W.2d 354, 356 (Ky. App. 1978) (internal quotation marks and citation omitted).[1] Here, no objections were filed within ten days. Instead, Grandparents filed a notice of appeal to this Court before the family court had even acted on the DRC's report. Thereafter, the family court simply signed the DRC report, which was then entered on March 27, seven days after the notice of appeal.

---

[1] *Haley* references CR 53.06(2), which became FCRPP 4.

In general, a party who desires to object to a report must do so as provided by the rules or be "precluded from questioning on appeal the action of the [family] court in confirming the" report of the DRC. *See United States v. Cent. Bank & Tr. Co.*, 511 S.W.2d 212, 214 (Ky. 1974). "[E]nforcement of such a rule is necessary as the means of informing the [family] court of the parties' disagreement with or complaint about the report." *Eiland v. Ferrell*, 937 S.W.2d 713, 716 (Ky. 1997). The family court rules and the local rules for Pike and Perry Counties require any objections to the DRC report to be raised within ten days. Again, Grandparents' failure to raise certain issues before the family court limits our scope of review. There can be no error to review when the issue was not raised before a previous adjudicating body. *See Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 852 (Ky. 2016) (citation omitted).[2]

However, in *Herndon v. Herndon*, 139 S.W.3d 822, 827 (Ky. 2004) (citing CR 61.02), the Kentucky Supreme Court held that "a claim of palpable error may be considered by an appellate court even though the issue was not presented to the court below." There, the Court remanded a matter to this Court to

---

[2] Grandparents contend that the family court erred by denying the appointment of a GAL and by not ordering a psychological evaluation, but these arguments were not raised by any objection to the initial denial of the same pending a full hearing nor by any objections to the subsequent report of the DRC.

review for palpable error, although the complaining party had failed to file any objections to the report of the DRC.  *Id.* at 826-27.

Thus, here, even though Grandparents failed to make timely objections to the DRC's report, and even though they did not request palpable error review on appeal, we conclude that they are "not precluded from raising a palpable error claim on appeal pursuant to CR 61.02."[3]  *See Rice v. Rice*, 372 S.W.3d 449, 452 (Ky. App. 2012) and *Turner v. Turner*, 672 S.W.3d 43, 51 (Ky. App. 2023).

Even though we were not provided a record of the hearing that led to the findings of the DRC, we can review those findings and the argument raised herein for palpable error.  Palpable error is one which results in "manifest injustice."  *Hunt v. Commonwealth*, 326 S.W.3d 437, 440 (Ky. 2010) (citation omitted).  "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions (CR 76.12(8)(a) [now RAP[4] 31(H)]); or (3) to review the issues raised in the brief for manifest injustice only[.]"  *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citation omitted).  Here, we elect to ignore the

---

[3] Grandparents also filed their notice of appeal prior to the entry of the opinion and order by the trial court.  However, contrary to a late filing which is fatal to an appeal, our Courts have permitted such premature notices to relate forward.  *Cassetty v. Commonwealth*, 495 S.W.3d 129, 133 (Ky. 2016).  Despite the premature nature of the notice, it put Dad and Mom "on notice of the intent to appeal *before* expiration of the thirty day time limit[.]"  *See Bd. of Regents of W. Ky. Univ. v. Clark*, 276 S.W.3d 819, 821 (Ky. 2009) (citation omitted).

[4] Kentucky Rules of Appellate Procedure.

deficiencies because Grandparents' brief does sufficiently note the procedural history contained within the record. Nevertheless, we find there has been no showing of manifest injustice in the rulings below.

## LEGAL ANALYSIS

KRS 405.021 provides, in relevant part, as follows: "(1)(a) The [family] Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree *if it determines that it is in the best interest of the child to do so*." (Emphasis added.)

When addressing grandparent visitation rights, we start with "[t]he constitutional presumption that a fit parent acts in the child's best interest[.]" *Hamilton v. Duvall*, 563 S.W.3d 697, 702 (Ky. App. 2018) (citation omitted). A grandparent petitioning for child visitation contrary to the wishes of the child's parent can overcome this presumption *only with clear and convincing evidence* that granting visitation to the grandparent is in the child's best interest. *Vibbert v. Vibbert*, 144 S.W.3d 292, 294 (Ky. App. 2004) (citation omitted). As our cases have noted, at stake is "the fundamental right of parents to raise their children as they see fit without undue interference from the state[.]" *Vibbert*, 144 S.W.3d at 295. In such cases, it is presumed a parent who is fit acts in his or her child's best interest. *Troxel v. Granville*, 530 U.S. 57, 68, 120 S. Ct. 2054, 2061, 147 L. Ed. 2d

49 (2000); *Walker*, 382 S.W.3d at 866 (citation omitted). We have found no evidence that either of these parents were deemed unfit. Thus, the presumption applies.

"To determine whether grandparent visitation is in the child's best interest . . . the [family] court must: consider a broad array of factors . . . the nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of time spent together; [and] the potential detriments and benefits to the child from granting visitation[.]" *K.C.O. v. Cabinet for Health & Fam. Servs.*, 518 S.W.3d 778, 784 (Ky. App. 2017) (internal quotation marks and citation omitted). Other factors include consideration of the "effect granting visitation would have on the child's relationship with the parents; the physical and emotional health of all the adults involved, parents and grandparents alike; the stability of the child's living and schooling arrangements; [and] the wishes and preferences of the child." *Vibbert*, 144 S.W.3d at 295.

On appeal, Grandparents recognize the aforementioned presumption and the applicability of KRS 405.021 and they correctly refer to the factors outlined in our case law. However, their argument on appeal is simply that the decision of the DRC was not supported by credible evidence. As part of our palpable error review, we can determine whether the DRC considered the factors required by our case law and whether findings were set forth in the written report.

Both of those requirements were met in the 26-page written opinion and order later adopted by the family court.

The opinion and order contained summaries of all witnesses who testified at the hearing. Those witnesses included Dad and Mom; Grandmother and Grandfather; and Anna, Dad's sister and aunt to the minor children. Anna testified that she had not had any contact with the children or Mom and Dad since 2017 and confirmed that her parents had not either, as "something happened" in late 2016 between those parties. She admitted that in 2018 she posted a video on social media about Mom not allowing Grandparents to see the children. Grandparents both testified that they had been close to the two older children prior to 2017 and had good relationships with their other grandchildren. They also admitted that there had been no contact since 2017 due to the lawsuits, threats, and various filings by both parties. Grandfather testified that Dad filed a protective order against him, which kept them from pursuing further contact, although they would often see the grandchildren in the community where their other grandchildren are involved in extracurricular events.

Dad testified from federal prison and confirmed that he had ceased contact with his parents and family in 2017. He denied that the contact between his children and Grandparents had been frequent prior to that. He testified that his children were doing well in school and that he maintains video contact with the

children regularly from prison.  He did not believe it was in his children's best interest to have any contact with Grandparents.

Mom also testified that the children's contact with Grandparents was sporadic before 2017 and was basically limited to holidays.  Since 2017, there had been no contact.  She testified that she continues to speak with Dad daily and that he is involved in the children's issues.  She stated that the children were doing well in school and involved in extracurricular activities and that she did not believe it was in their best interest to have any contact with Grandparents.

The DRC then addressed the controlling statute and case law and identified each of the factors generally enumerated in our case law as follows:

1.   **The nature and stability of the relationship between the children and Grandparents seeking visitation**:  The DRC noted that all parties agreed that there had been no relationship for a period of five years and that there was no evidence that Grandparents supported the children emotionally or financially or kept them overnight prior to 2017.

2.   **The amount of time Grandparents and children spent together**:  The DRC again noted the undisputed testimony that Grandparents had spent no time with the children in over five

years.  The evidence was conflicting as to how much involvement Grandparents had before 2017.

3.  **The potential detriments and benefits to the children**:  The DRC noted that the children were doing well based upon the testimony provided and that both Mom and Dad were against visitation or any relationship with Grandparents.  Neither parent wished to have a relationship with Grandparents and there was clear animosity between them.

4.  **The effect granting visitation would have on the children's relationship with the parents**:  The DRC noted that both parents were against any relationship with Grandparents and there was evidence that the children were doing well and were not familiar with the Grandparents.  There was clear animosity between these parties that could affect the children.

5.  **The physical and emotional health of all adults involved**:  The DRC noted that there was no evidence that the needs of the children were not being met, and no evidence was presented of any issues involving the physical or emotional health of Dad and Mom.

6. **The stability of the children's living and schooling arrangements**: The children have attended the same schools and resided in the same area their entire lives, and there was no testimony of instability.

7. **The wishes and preferences of the children**: This factor is unknown as the children were not questioned.

8. **The motivation of the adults participating in the proceedings**: In this regard, the DRC specifically found that Dad and Mom were denying visitation to Grandparents as a means of punishment or retribution, having cut off contact in 2017, and having filed a protective order and other complaints against Grandfather which had been dismissed. Again, she noted the animosity between all of these adults as indicated by the several filings and statements made against each other.

However, the DRC specifically noted that despite this motivation on the part of Dad and Mom, Grandparents had failed to establish that they shared such a close bond that severing it would cause distress to the children. Rather, the DRC noted the evidence that the bond had been severed for five years; that there was evidence that the children were not suffering but were well-adjusted; and that

Grandparents did not present any evidence that Dad and Mom were clearly mistaken in their belief that grandparent visitation was not in their children's best interest.

Citing *Pinto v. Robison*, 607 S.W.3d 669 (Ky. 2020) and *Walker*, 382 S.W.3d at 871, the DRC concluded that if the grandparent, as here, fails to present such evidence to the court, then parental opposition alone may be sufficient to deny grandparent visitation. Such determination did not result in palpable error.

## CONCLUSION

Having reviewed the record before us and the arguments presented to the extent we are able to do so, we find no palpable error in that conclusion and affirm the decision of the Pike Circuit Court adopting the opinion and order of the DRC.

ALL CONCUR.

BRIEF FOR APPELLANTS:

Eugene Sisco, Jr.
Pikeville, Kentucky

BRIEF FOR APPELLEE
AMBER HUNT SISCO:

Tammy C. Skeens
Pikeville, Kentucky