RENDERED:  JUNE 12, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0516-MR

HUDSON FLYNN                                                    APPELLANT

v.      APPEAL FROM HARDIN FAMILY COURT
        HONORABLE M. BRENT HALL, JUDGE
        ACTION NO. 19-CI-01636

ASHLEY FOSTER-FLYNN                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE:  Hudson Flynn ("Father") appeals from the Hardin Family

Court's modification of child custody to sole custody in favor of Ashley Foster-

Flynn ("Mother").  We affirm.

# FACTS

In March 2020, the Hardin Family Court entered a decree dissolving the marriage of Mother and Father. The divorce decree stated Mother and Father would have joint custody and equal timesharing of their minor child ("Child").

In November 2024, Mother filed a motion requesting that the court modify custody and grant her sole custody. In the alternative, she requested a modification of parenting time so Child would reside primarily with her. She also requested that Father's parenting time be supervised.

Mother also filed a supporting affidavit. She averred Father had lived in different people's households (including hers) for short periods over the last year, but that Father had been kicked out of each home. She suspected that Father was drinking heavily. She expressed concern that Child did not receive his prescribed medication when with Father. Mother's affidavit further stated that Father had recently been arrested for driving under the influence ("DUI") while he was on the way to pick up Child. Mother averred that Father asked her to pick up Child but did not tell her why he could not pick up Child.

In December 2024, the family court entered an order setting a hearing on Mother's motion to modify custody for February 12, 2025. This order stated each party had until January 29, 2025, to file witness and exhibit lists for the modification hearing.

Mother filed her witness and exhibit list on January 29, 2025. She also filed a supplemental witness and exhibit list on January 31, 2025. According to Father, he did not receive these witness and exhibit lists prior to the February 12, 2025, hearing.

On February 25, 2025, the family court entered an order modifying custody and granting sole custody to Mother. The court made findings about Father's recently being arrested for DUI on his way to pick up Child. In its order dated February 25, 2025, the court stated: "while not yet convicted of this DUI, it was clear that he [Father] was manifestly under the influence at the time he left the lake to go pick up the child."

The court also found Father had been evicted from several residences. The court noted that two witnesses testified to Father's drinking daily while living in their homes. The court also found Father chose not to testify at the hearing, did not call any witnesses, and did not cross-examine Mother's witnesses.

The court found Mother had stable employment and housing and did not appear to currently have an active substance abuse problem. On the other hand, it found Father lacked stable housing and employment and had an alcohol use problem.

The court opined that until Father could provide stable housing or control his alcohol consumption, granting sole custody to Mother was in Child's

best interest. It also found Father's "decision making and actions were manifestly unsafe and endangered the child should he [Father] not have gotten pulled over for the DUI." The court ordered that Father must complete a substance abuse assessment and that Father's visitation would be supervised.

On March 5, 2025, Father filed a motion, by counsel, to set aside the custody modification order and set another hearing. His motion did not state specific grounds for setting aside the custody modification order. However, he also filed an affidavit stating he had not received the custody modification order and had only learned of this order when he saw Mother at Child's game. He further averred he recently found out Mother's attorney did not send witness and exhibits lists to his correct address. Father's affidavit also stated that if he had known which witnesses Mother intended to call, "he would have been able to prepare and provide information about the witnesses that would have changed the outcome tremendously."

On March 11, 2025, the family court conducted a hearing on Father's motion to set aside the custody modification order. That same day an envelope was filed in the record, which was postmarked January 31, 2025, and stamped "return to sender, no such [house] number, unable to forward" on March 3, 2025. The envelope was addressed to the same street but a different house number than

the address for Father in the divorce petition.  This envelope contained Mother's supplemental witness and exhibit list.

On March 25, 2025, the family court entered an order denying Father's motion to set aside the custody modification.  (The order stated the court had heard testimony on the motion to set aside but did not specifically set forth the court's reasoning.)  Following the denial of the motion to set aside the custody modification, Father filed a timely appeal from the custody modification.[1]  Further facts will be set forth as necessary in our analysis.

**ANALYSIS**

Before we address Father's arguments for relief, we first address Mother's assertion that the appeal should be dismissed as one from an interlocutory order which is not final and appealable.  This assertion is incorrect.

**Child Custody Modification Order is Inherently Final and Appealable**

Mother points out the family court did not expressly state that its orders entered on February 25th and March 11th of 2025 were final and

---

[1] Father's Notice of Appeal states he is appealing from the denial of the motion to set aside the custody modification.  His motion to set aside the custody modification, filed within ten days of entry of the modification order, appears in substance to be a motion filed pursuant to Kentucky Rules of Civil Procedure (CR) 59.05.  We construe his appeal as being from the custody modification, because the order denying the CR 59.05 motion did not alter the custody modification. *See generally Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019).  Nonetheless, the time for appealing the custody modification did not run until the family court entered the order denying the CR 59.05 motion.  Kentucky Rules of Appellate Procedure (RAP) 3(E)(2).

-5-

appealable. She also notes the court ordered Father to undergo a substance abuse assessment and to follow all recommendations for treatment.

Mother asserts that the court's ordering Father to take additional actions indicates that the order did not resolve all remaining issues in the case. So, she suggests the appeal must be dismissed as not from a final and appealable order.[2] *See* CR 54.01 ("A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under Rule 54.02."); CR 54.02(1) ("the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay").

Despite the lack of express "final and appealable" language in the family court's orders and despite Father's being required to take additional action, the family court's modification of child custody from joint custody to sole custody is an inherently final and appealable order. *See Turner v. Turner*, 672 S.W.3d 43, 50 (Ky. App. 2023) ("This order may not facially appear final and appealable under CR 54.01 or CR 54.02 requirements especially since the family court

---

[2] To support her argument that the appeal must be dismissed because the family court's orders were not expressly deemed final and appealable and did not resolve all remaining issues in the case in her estimation, Mother cites to: "*Hubbard v. Hubbard*, 303 S.W.3d 393, 396 (*Ky. App. 2010)*" on page 5 of her appellee brief. Perhaps Mother intended to cite to *Hubbard v. Hubbard*, 303 Ky. 411, 197 S.W.2d 923 (1946) since there is no 2010 Kentucky published precedent with this case name according to a Westlaw search. While perhaps the citation error was inadvertent, we urge Mother's attorney to take greater care to accurately cite to authority in future appeals.

envisioned possibly issuing additional rulings after the passage of at least three months.  But we conclude the order is by its nature appealable as a decision impacting the custody and care of the minor children.") (footnote omitted).  *See also N.B. v. C.H.*, 351 S.W.3d 214, 219 (Ky. App. 2011); *Anderson v. Johnson*, 350 S.W.3d 453, 455 (Ky. 2011).

Therefore, we decline to dismiss this appeal.  Moreover, by separate order entered this same day, we deny as moot Father's motion to submit a *nunc pro tunc* order entered by the family court while this appeal was pending.[3]  Next, we address how the parties' attorneys' failure to comply with appellate briefing rules affects our resolution of this case, especially considering how such non-compliance affects the standard of review we apply.

### Lack of Compliance with Appellate Briefing Rules, Especially the Preservation Statement Requirement, Affects Our Review

Neither party's appellate brief fully complies with our Rules of Appellate Procedure.  Despite requirements that appellant briefs contain ample references to specific locations in the record, RAP 32(A)(3)-(4), the appellant brief

---

[3] We recognize that courts retain continuing jurisdiction over child custody matters, even after an appeal has been filed.  But we remind the bench and bar that, once an appeal is filed, attempts to convert an otherwise interlocutory, non-appealable order into an appealable one by adding language about finality and appealability through *nunc pro tunc* orders do not work since lower courts generally lose jurisdiction when an appeal is pending.  *Wright v. Ecolab, Inc.*, 461 S.W.3d 753, 758 (Ky. 2015).

contains just one reference to the written record. The appellee brief has no references to any specific portion of the record. *See* RAP 32(B)(2)-(3). Neither party's appellate brief contains any references to recordings of hearings in the record. Also, neither party's appellate brief indicates where items in the appendix can be found in the record. *See* RAP 32(E)(1)(d); RAP 32(B)(6).

Also, Father's appellant brief does not provide at the beginning of his argument a clear statement with specific references to the record identifying if or how he preserved the issues he raises on appeal by presenting them to the family court. *See* RAP 32(A)(4). At most, Father's brief implicitly suggests the issues he raised on appeal were not preserved since he argues that palpable error occurred.

When an appellant fails to provide a preservation statement identifying if and how an issue was preserved for appeal, Kentucky precedent clearly provides that the appellate court may treat the issue as unpreserved. *See* *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) ("If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved.").

Moreover, unpreserved issues may, at most, be reviewed for palpable error resulting in manifest injustice:

> A palpable error which affects the substantial rights of a party **may** be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and

appropriate relief **may** be granted upon a determination
that manifest injustice has resulted from the error.

CR 61.02 (emphasis added).

While unpreserved issues may be reviewed for palpable error resulting in manifest injustice, an appellate court is not obligated to conduct palpable error review if the appellant does not clearly request such review. *See generally J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 153 (Ky. App. 2024); *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).[4]

Father's appellant brief does not even expressly request palpable error review. However, as Father argues that palpable error occurred, we will generously construe this argument as an implicit request for palpable error review. Thus, we leniently review the issues he raises on appeal for palpable error resulting in manifest injustice.

Although we review the issues Father presents on appeal for palpable error rather than under otherwise applicable standards of review, we do not elect to otherwise impose sanctions.[5] However, we urge counsel to carefully review the

---

[4] *Oakley*, 391 S.W.3d 377, was rendered prior to the adoption of the Kentucky Rules of Appellate Procedure. Nonetheless, *Oakley* applied then-effective substantively similar appellate briefing provisions in former Kentucky Rules of Civil Procedure. *See id*. at 378-80. Moreover, its reasoning remains sound.

[5] Mother's attorney does not appear to have a prior history of non-compliance with appellate briefing rules based on a Westlaw search. Father's attorney was previously found to have violated prior appellate briefing rules by including items outside the record in an appellee brief

Kentucky Rules of Appellate Procedure before filing further appellate briefs as failure to substantially comply with appellate briefing rules can result in serious consequences including striking briefs and dismissing appeals. RAP 10(B)(3); RAP 31(H)(1)-(2).

Having discussed the parties' attorneys' failure to fully comply with appellate briefing rules, we now turn our attention to the effect of this Court's being provided with no recordings of hearings in the record.

**Failure to Include Recordings of Hearings in Record Affects our Review**

As previously noted, neither party's brief made any references to recordings of relevant hearings. Moreover, no recordings of any hearings were included in the record on appeal, so we have not been able to review what happened in any hearings to aid us in resolving this appeal.

Father did not file a designation of record to identify what hearing recordings should be included in the record on appeal. *See* RAP 24(B)(1)(a):

> Appellant or counsel for appellant, if any, shall provide the clerk of the trial court with a designation listing with specificity the dates on which official recordings were made for all pre-trial and post-trial proceedings necessary for inclusion in the record on appeal. While trial recordings are part of the record on appeal regardless of designation, to facilitate the timely preparation and

---

appendix. *Brannan v. Brannan*, No. 2009-CA-001400-MR, 2010 WL 3927929, at *5 (Ky. App. Oct. 8, 2010) (unpublished).

-10-

certification of the record, the parties should list the date(s) of any trial proceedings.

Mother also did not file a designation of record, despite being permitted to do so pursuant to RAP 24(B)(2) (subject to timing requirements, "any other party to the appeal may file a designation of additional dates of pre-trial or post-trial recordings as that party wishes to be included").

In addition to neither party filing a designation of record, the certification of the record prepared by the Hardin Circuit Clerk clearly indicates that no video or audio recordings of any hearings in the action were being provided in the record on appeal. Moreover, the clerk's certification of the record states it was distributed to both parties' attorneys.[6]

As the appellant, Father had the responsibility to make sure that the record on appeal is sufficient for this Court to review his claims of alleged error by the lower court. *Smith v. Smith*, 450 S.W.3d 729, 731 (Ky. App. 2014). Moreover,

---

[6] RAP (A)(3) appears to require all video recordings to be included in the record on appeal regardless of designation. But then RAP 26(B)(2) states: "The clerk shall prepare and certify official recordings of the trial resulting in the order or judgment being appealed and shall further certify other official recordings that have been designated by a party." However, Father has not asserted that the hearings on the motion for modification and the motion to set aside were trial proceedings for which the official recordings should have been included with the record on appeal. And in addition to not filing a designation of record to include recordings of the February 12, 2025, and the March 11, 2025 hearings in the record on appeal, Father also apparently took no steps to supplement the record to include recordings of relevant hearings despite the clerk's certification of the record clearly showing that only the written record and no recordings of any hearings (audio or video) were included in the record on appeal. *See* RAP 25.

especially since the clerk's certification of the record clearly indicates that no recordings of hearings were included in the record on appeal, Father and his attorney should have been aware we would not receive such recordings to review. Therefore, we may assume these recordings, omitted from the record on appeal, would support the family court's decision. *Id*. at 731-32.[7]

Moreover, even if we leniently accept all of Father's factual allegations as true despite the lack of hearing recordings in the record on appeal and the almost total lack of references to the record in his brief, we still discern no palpable error resulting in manifest injustice.

### No Palpable Error in Family Court's Decision Despite Father's Not Receiving Mother's Witness/Exhibit Lists Prior to Custody Modification Hearing

In his statement of the case, Father asserts he "was not given notice of who the witnesses were against him in the Hardin Circuit Family Court before the hearing that he went to without counsel." (Appellant brief, page 2). Father contends his not being provided with witness lists or other documents in advance of the hearing violated CR 5.02(1), FCRPP[8] 7, and/or local Hardin County Rules. Father admits he was aware of the hearing date and appeared at the hearing on the custody modification motion. However, he alleges he never received Mother's

_____

[7] Father's attorney represented the prevailing appellee in *Smith*, 450 S.W.3d at 731.

[8] Family Court Rules of Procedure and Practice.

-12-

witness and exhibit lists prior to the hearing since such lists were sent to the wrong address.

Father states he appeared at the custody modification hearing *pro se* and told the court he was unable to reach his attorney because he and Child were ill. Father says he requested a continuance. He also states the court advised him of his right not to incriminate himself but still proceeded with the hearing, at which Father did not testify.

Father asserts he was not able to prepare for the hearing and provide information about "counter-witnesses" due to his not receiving Mother's witness and exhibit lists. He contends the outcome would have changed tremendously if he had been able to prepare and provide information about other witnesses. He asserts his substantial rights were affected because he lost joint custody and equal timesharing, and Mother was awarded sole custody while Father's visitation would be supervised.

While Father was undoubtedly affected by the family court's custody modification ruling, we discern no palpable error resulting in manifest injustice. Despite not receiving Mother's witness and exhibit lists prior to the hearing, Father was afforded notice of the hearing and an opportunity to be heard. And despite his general allegations of being unable to fully prepare for the hearing and of this having a tremendous effect on the outcome, Father has not specifically identified

what evidence he would have offered if presented with Mother's witness and exhibit lists prior to the hearing.

Father has also not indicated what evidence he offered at the hearing on the motion to set aside the custody modification, other than referring to the envelope marked return to sender being filed in the record that same day and alluding to testimony that this envelope was sent to the wrong address by mistake. Nor has he cited any controlling authority which effectively supports his contention that the family court committed palpable error in proceeding with the modification hearing despite Father's not previously receiving Mother's witness and exhibit lists.

In arguing that Father's not receiving Mother's witness and exhibit lists before the modification hearing amounted to palpable error, Father cites three published Kentucky appellate opinions which discuss palpable error. *See generally Rice v. Rice*, 372 S.W.3d 449 (Ky. App. 2023); *Hibdon v. Hibdon*, 247 S.W.3d 915 (Ky. App. 2007); *W.R.G. v. K.C.*, 673 S.W.3d 81 (Ky. App. 2023). However, only one of these cited opinions discussed a situation in which a party did not receive witness and exhibit lists prior to a hearing. *See id.* at 83.

In *W.R.G.*, we conducted a palpable error review. *Id.* at 83-84. We ultimately vacated the judgment of adoption and termination of parental rights and remanded for a new hearing because the circuit court and opposing counsel failed

-14-

to abide by CR 5.02(1) service requirements and, in doing so, violated the appellant father's due process rights. *Id.* at 86-87. But though the failure to provide the appellant father with the opposing party's witness and exhibit lists was also noted, *W.R.G.* is distinguishable from the present case because the appellant father did not receive notice of the final hearing and was absent from the final hearing. *See id.* at 83.

In *W.R.G.*, we discussed three unpublished opinions construing CR 5.02(1) (as amended several years prior) regarding requests for appellate relief due to appellants' not receiving proper notice of the action or of the final hearing. *Id.* at 85-86. We then granted appellate relief because the lower court and opposing counsel continued to send court-related documents to a halfway house where they knew the appellant father was not receiving mail:

> Here, the circuit court and Stepmother's counsel clearly knew Father was not receiving mail at the halfway house when they proceeded with the final hearing. At a minimum, the returned trial order marked "not deliverable" is irrefutable evidence of the court's knowledge that Father had not received notice. Stepmother's counsel also knew his motion and pretrial compliance did not reach Father but did nothing to ensure proper service. Despite her claim that the halfway house was Father's last known address, Stepmother entered evidence at the final hearing containing a different, likely more current, address for him from the Kentucky Sex Offender Registry. Continuing to serve a party at an address only to have the mail repeatedly returned as undeliverable is entirely insufficient under CR 5.02(1).

> . . . The circuit court and Stepmother's counsel's violations of CR 5.02(1) constitute palpable errors mandating a new hearing on the petition.
>
> . . .
>
> This issue could have been remedied earlier if either Stepmother's counsel or the court followed CR 5.02(1). Remand of this matter for a new hearing is solely required because of the failure of counsel and the court to abide by the requirements for service and, in violating the rule, also violating Father's due process rights.

*W.R.G.*, 673 S.W.3d at 86-87.

Unlike *W.R.G.*, Father was aware of the custody modification hearing date, and he appeared at this hearing. Moreover, also unlike *W.R.G.*, there is no clear indication in the record that the family court or opposing counsel was aware that court documents had been sent to Father at the wrong address **prior to** the custody modification hearing. Nor does the record indicate repeated prior instances of items sent to Father being returned as undeliverable, unlike *W.R.G.* *See id*. at 83. In fact, Father states in his brief that court documents had previously been successfully sent to him at the correct address.

So, we reject Father's assertion that binding precedent calls for us to conclude that his not receiving witness and exhibit lists before the modification hearing amounts to palpable error here. Also, Father cited no statutes about child custody or modification thereof in his appellant brief. And we need not conduct statutory research or make statutory arguments on his behalf. *See Hadley v.*

*Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) ("It is not our function as an appellate court to research and construct a party's legal arguments, and we decline to do so here.").

In sum, we discern no palpable error in the family court's proceeding with the modification hearing and granting Mother sole custody despite Father's not receiving Mother's witness and exhibit lists prior to the modification hearing, nor with its denying Father's motion to set aside the custody modification.[9]

**Father Is Not Entitled to Relief Based on His Unsupported Argument that the Family Court Assumed His Guilt on the DUI Charge**

We quote in full Father's second argument for relief in his brief:

II. THE JUDGE ASSUMED THAT THE APPELLANT WAS GUILTY WITHOUT HAVING A TRIAL AT THE TIME OF THIS DECISION. IT WAS PUT INTO THE RECORD BY AVOWAL TO PREJUDICE THE COURT.

The Appellee [Mother] filed a citation from another court by avowal without having been resolved by a trial and found guilty.

(Appellant brief, page 5) (heading in all caps in original).

This argument apparently pertains to the family court's findings in its order that Father was charged with DUI after being arrested on his way to pick up

---

[9] Even assuming, *arguendo*, that the witness/exhibit list issue was preserved, the lack of specific prejudice indicated by Father's brief suggests any error on the family court's part was harmless under CR 61.01. Our holding is limited to the unique facts and circumstances of this case.

Child and that: "while not yet convicted of this DUI, it was clear that he was manifestly under the influence at the time he left the lake to go pick up the child."

Father does not state if or how this issue was preserved for review. Moreover, Father cites no supporting authority for his contention that he deserves relief because, in his view, the family court assumed he was guilty of DUI. Given the lack of citation to any supporting authority on this issue, we may consider this issue waived. *See Hadley*, 186 S.W.3d at 759 ("an alleged error may be deemed waived where an appellant fails to cite any authority in support of the issues and arguments advanced on appeal"). "Such a terse, conclusory assertion wholly unaccompanied by meaningfully developed argument or citation to authority is insufficient to merit appellate relief." *Schell v. Young*, 640 S.W.3d 24, 32 (Ky. App. 2021).

Even leniently reviewing this issue for palpable error, we agree with Mother that the family court did not assume Father's guilt on the DUI charge since the court expressly noted Father had not yet been convicted of DUI. Moreover, the family court's granting Mother sole custody upon its determination that this was in Child's best interest in consideration of all circumstances did not amount to palpable error resulting in manifest injustice.

The family court's modification of custody was not based solely on Father's having been recently charged, though not yet convicted, of DUI. Instead,

the family court also made several detailed findings about Father's recent housing instability (including his living with various people but getting kicked out or evicted from these residences) and about various witnesses testifying that Father appeared to be drinking heavily and often behaving inappropriately in the presence of children. The court specifically found: "It is uncontroverted that multiple people believe that Respondent's [Father's] alcohol usage is problematic for his interpersonal relationships, including that with the child." The court also found Father lacked stable employment.

Father has not disputed the accuracy of any of the court's factual findings, despite generally asserting the court assumed Father's guilt before the DUI charge was tried. Nor has he even alleged that he offered testimony at the hearing on his motion to set aside the custody modification which cast doubt on any of the court's "best interest" factual findings—such as the court's findings about Father's lack of stable employment or housing. (Instead, Father has alluded only to evidence that Mother's witness and exhibit lists were sent to the wrong address.) And again, considering Father's failure to make sure that recordings of the hearings on the motions to modify and to set aside were included in the record, we may assume that the omitted hearing recordings would support the family court's decision. *See Smith*, 450 S.W.3d at 731-32.

In sum, we discern no palpable error in the family court's modifying custody and granting sole custody to Mother based on its taking note that Father had been charged with, but not yet convicted of, DUI, among other circumstances.

Further arguments in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we AFFIRM.


ALL CONCUR.


BRIEF FOR APPELLANT:

Phyllis K. Lonneman
Elizabethtown, Kentucky

BRIEF FOR APPELLEE:

Margo Barnett
Elizabethtown, Kentucky